Cheshire
No. 92-232

THE STATE OF NEW HAMPSHIRE

v.

EARL HASTINGS

September 16, 1993

*Jeffrey R. Howard*, attorney general (*Mark S. Zuckerman*, assistant attorney general, on the brief, and *Tina L. Nadeau*, assistant attorney general, orally), for the State.

*Albert E. Scherr*, assistant appellate defender, of Concord, by brief and orally, for the defendant.

BATCHELDER, J. The defendant, Earl Hastings, appeals his conviction of being a felon in possession of a firearm following a jury trial in Superior Court (*Perkins*, J.). The defendant argues that the trial court erred in admitting evidence of other firearms convictions

pursuant to New Hampshire Rule of Evidence 404(b), and that the seizure of the firearm was unconstitutional because the defendant's purported consent was involuntary. Although we hold that the seizure was lawful, we also hold that the "other crimes" evidence was inadmissible, and, therefore, we reverse and remand.

On September 18, 1987, officers from the Hinsdale Police Department, together with the State Police, executed a search warrant at the defendant's residence and curtilage. The warrant authorized the search for, among other things, a .45 caliber revolver sought in connection with a criminal restraint allegation against the defendant's wife, Gayla, and with an allegation against the defendant of being a felon in possession of a firearm. Finding no gun inside the residence, the officers moved outside to search the garage. During the search of the garage, the defendant drove up in his van with Gayla. He got out of the van and asked Officer Luther Fairbanks what was going on. Fairbanks explained that the police were executing a search pursuant to a warrant relative to the offense of criminal restraint. He told the defendant that the police were searching for a .45 caliber gun and that if the defendant gave it to them, the search would be over and the police would leave. The defendant then looked angrily at Gayla, said something about women causing him trouble, and walked back to the van. He leaned in from the driver's side, over the driver's seat, and emerged holding a .45 caliber revolver, which he turned over to Fairbanks. The defendant was subsequently arrested and charged with being a felon in possession of a firearm.

 Ten months later, the defendant was arrested in Vermont on three federal firearms charges, resulting in convictions in February 1991. At the defendant's trial on the instant offense, the State was permitted, over the defendant's objection, to introduce the evidence of the federal convictions pursuant to New Hampshire Rule of Evidence 404(b) in order to prove intent.

Rule 404(b) provides:

> "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

Evidence of other crimes is admissible if the trial court determines that it is relevant for a purpose other than proving character or disposition, that clear proof exists that the defendant committed the

other crime, and that the probative value of the evidence is not substantially outweighed by prejudice to the defendant. *State v. Michaud*, 135 N.H. 723, 727, 610 A.2d 354, 356 (1992). The decision to admit such evidence lies within the trial court's sound discretion, *State v. Trainor*, 130 N.H. 371, 374, 540 A.2d 1236, 1238 (1988), and an abuse of that discretion will be found only if the defendant can demonstrate that the ruling was "clearly untenable or unreasonable to the prejudice of his case." *Michaud*, 135 N.H. at 727, 610 A.2d at 356 (quotation omitted).

■ Before applying this three-pronged test, we note that the "other crimes" in this case were committed subsequent to the charged offense. Our decisions in the area of the admissibility of evidence under Rule 404(b) have primarily involved evidence of *prior* bad acts. *See, e.g., State v. Dushame*, 136 N.H. 309, 616 A.2d 469 (1992); *State v. Simonds*, 135 N.H. 203, 600 A.2d 928 (1991). *But see State v. Fecteau*, 133 N.H. 860, 872–73, 587 A.2d 591, 599 (1991) (once defendant opened the door, evidence of defendant's subsequent burglary arrest admitted at sexual assault trial). The rule itself, however, does not limit admissibility to evidence of prior offenses, as it refers simply to "[e]vidence of *other* crimes, wrongs, or acts." (Emphasis added.) We hold that subsequent bad act evidence is not *per se* inadmissible but must in each case, as with prior bad act evidence, satisfy, *inter alia*, the relevancy prong of the test for admissibility. *See United States v. Garcia-Rosa*, 876 F.2d 209, 221 (1st Cir. 1989) (holding subsequent act evidence inadmissible bad character evidence, while "not imply[ing] that *all* subsequent act evidence is inadmissible under Rule 404(b)").

■ The evidence at issue here is the defendant's subsequent possession of an automatic rifle and forty-nine rounds of ammunition. The State argues only that this evidence was relevant to prove the defendant's knowledge and intent on the earlier, charged occasion. The defendant counters that the evidence was not probative of his knowing possession in New Hampshire ten months earlier and was relevant only for the impermissible purpose of showing his propensity to possess firearms. We agree with the defendant.

■■ The persuasive value of prior bad act evidence to prove intent derives from the inference that when an individual acts with a criminal intent on one occasion, it is less objectively probable that he or she acted innocently on a later occasion. *See generally* Imwinkelried, *The Use of Evidence of an Accused's Uncharged Misconduct to Prove Mens Rea*," 130 MIL. L. REV. 41, 64–66 (1990). While

Rule 404(b) does not automatically bar subsequent bad act evidence, "[t]he temporal (as well as the logical) relationship between a defendant's later act and his earlier state of mind attenuates the relevance of such proof . . . ." *United States v. Watson*, 894 F.2d 1345, 1349 (D.C. Cir. 1990); *cf. State v. Woodsum*, 137 N.H. 198, 201, 624 A.2d 1342, 1344 (1993) ("a defendant's posture in plea negotiations at a date after the alleged offense . . . is at best weak evidence of the defendant's state of mind at the time of the alleged crime"). We believe that, to be relevant to a defendant's earlier state of mind, subsequent acts must be "fairly recent and in some significant way connected with prior material events." *Watson*, 894 F.2d at 1349.

The evidence here was not only not connected in some significant way with the previous event, but it was not in any way connected. It did not, for example, show the defendant's consciousness of guilt, *see United States v. Monahan*, 633 F.2d 984, 985 (1st Cir. 1980) (evidence of threat of harm to key witness in cocaine trial "implies a knowledge and fear of particular and damaging testimony intimately related to the prosecution at hand"), nor did it show a common scheme, *see United States v. Manafzadeh*, 592 F.2d 81, 88 (2d Cir. 1979) (subsequent fraudulent check offenses, relative to charged offense, wholly separate and unconnected transactions). The later gun offenses were "at best weak evidence of the defendant's state of mind at the time of the alleged crime," *Woodsum*, 137 N.H. at 201, 624 A.2d at 1344, and at worst show the defendant to be disposed to possess guns, an impermissible use of the evidence under Rule 404(b), *see State v. Blackey*, 137 N.H. 91, 623 A.2d 1331 (1993).

One commentator has noted the dangerous blur in the distinction between the permissible and impermissible uses of other crimes evidence:

> "The charged offense occurred at one time and place, while the uncharged crime ordinarily occurs at a different time and place. To bridge the temporal and spatial gap between the two incidents, the prosecutor must assume the accused's propensity to entertain the same intent in similar situations. That assumption is the inescapable link between the charged and uncharged crimes. The trier of fact can reason from the starting point of the uncharged crime to a conclusion about the *mens rea* of the charged crime only through an intermediate assumption about the accused's character or propensity."

Imwinkelried, *supra* at 51–52; *cf. State v. Dushame*, 136 N.H. at 319, 616 A.2d at 475 (Brock, C.J., concurring in part and dissenting in

part) ("The line between the prohibited use of [the other crimes] evidence to prove character or disposition [to commit a crime] and the use permitted by the trial court to prove recklessness is so fine as to be indiscernible."). We agree with the First Circuit Court of Appeals' conclusion in a drug case where knowledge was at issue: "We fail to understand how the jury could make the inference . . . require[d] — that possession of cocaine at one point in time implies possession of cocaine nineteen months earlier — without relying on an assessment of the defendant's character, which is exactly what Rule 404(b) is designed to prevent." *Garcia-Rosa*, 876 F.2d at 221.

The prosecutor here, while formally contending in his motion *in limine* that the evidence was probative of intent, argued to the trial court that the subsequent offenses indicated "an individual who has an ongoing relationship with firearms." This is simply evidence of propensity or disposition, prohibited by Rule 404(b), sought to be introduced through the mechanical recitation of "intent" as the password for admissibility. We hold that the evidence was not probative of the defendant's intent but was merely relevant for the prohibited purpose of proving his disposition towards possession of firearms, and was therefore inadmissible.

Furthermore, the State has not established that admitting the evidence of other firearms offenses was harmless error. The defense at trial was that the gun recovered from the defendant's van belonged to his wife, and that he was unaware of its presence there until she told him just prior to its seizure. Although the State's case was strong, we cannot say beyond a reasonable doubt that the verdict was unaffected by the "illegitimate boost that [the State] received," *Garcia-Rosa*, 876 F.2d at 222, when the jury heard of the federal convictions for possessing an automatic rifle.

■ The defendant also argues, under the fourth amendment and part I, article 19 of the State Constitution, that he did not validly consent to the seizure of the gun from his van. Contending he was merely acquiescing to a police claim of lawful authority under a search warrant, he argues that the police engaged in misrepresentation by not informing him that the warrant extended only to his residence and that he, in addition to his wife, was a focus of their investigation. The trial court found that the defendant voluntarily surrendered the gun to the police in the absence of coercion or trickery. Voluntariness is a question of fact, based on the totality of the circumstances. *State v. Green*, 133 N.H. 249, 259, 575 A.2d 1308, 1314–15 (1990). "In reviewing a trial court's finding of voluntary con-

sent, we will not overturn the finding unless it is without support in the record." *Id.* at 259, 575 A.2d at 1314 (quotation omitted).

We agree with the trial court that nothing coercive or deceptive occurred in the police conduct leading to the defendant's delivery of the gun. The uncontroverted evidence shows that the defendant, with prior experience with the police, appeared throughout this encounter to be confident and in control and in no way coerced. The police accurately stated that they were on the premises conducting a search pursuant to a warrant and would leave as soon as they found the gun they sought. The testimony of the police officers makes clear that the defendant immediately reached inside the van to retrieve the gun, surprising them to the extent that they belatedly realized they might be in peril. At no time did the officers state or suggest they had the authority to search the van. *Cf. State v. McGann*, 124 N.H. 101, 106, 467 A.2d 571, 574 (1983) (consent to search invalid where officers not on premises to which authority to search extended). Situated where they lawfully had a right to be under the search warrant, the police in effect seized the gun in plain view. *See State v. Maguire*, 129 N.H. 165, 169, 523 A.2d 120, 123 (1987). Where there was no police overreaching or exploitation of the defendant, and thus no illegal police conduct to deter, we find in all the circumstances that the seizure was voluntary and constitutionally valid.

*Reversed and remanded.*

All concurred.