Cheshire
No. 92-035

THE STATE OF NEW HAMPSHIRE

v.

ALAN RICHARDSON

December 30, 1993

*Jeffrey R. Howard*, attorney general (*Amy Vorenberg*, assistant attorney general, on the brief and orally), for the State.

*Brennan, Caron, Lenehan & Iacopino*, of Manchester (*Michael J. Iacopino* on the brief and orally), for the defendant.

BATCHELDER, J.   The defendant, Alan Richardson, appeals his convictions of simple assault, theft, and criminal threatening following a jury trial in Superior Court (*McGuire*, J.). The defendant argues: (1) that the trial court erred in admitting evidence of prior and subsequent bad acts pursuant to New Hampshire Rule of Evidence 404(b); (2) that it erred in admitting evidence of his removal to pro-

tective custody prior to the charged offenses; (3) that it erred in allowing a police officer to testify that he had had "past dealings" with the defendant; and (4) that the evidence was insufficient to support his theft conviction. We hold that the subsequent bad act evidence was inadmissible and therefore reverse.

The State charged the defendant with assaulting, threatening and committing theft against Leah Gowing on May 18, 1991. The defendant and Gowing had been friends for about a month prior to that time. The events giving rise to the charges occurred at the shelter at which the defendant had been living. While driving the defendant to the shelter on May 18, Gowing held on her lap his belt pack, which he had lent to her and which contained their commingled items, including approximately $520 belonging to Gowing. When Gowing asked the defendant to return some items that were in the pack, he took it from her lap, removed some of her things, and held on to the pack. Upon returning to the shelter, Gowing told the defendant that she wanted her money back, and he gave her all but twenty dollars. When Gowing persisted in asking for the rest of her money, the defendant grew belligerent and struck her, causing her to stumble into a corner. The defendant proceeded towards Gowing, threatening to kill her. Believing he would carry out his threat, Gowing told the defendant he could have anything he wanted and ran out the door and into her car. The defendant jumped into the car, and after Gowing drove a short distance, he grabbed the keys and turned off the motor. He then got out and started removing his things from the trunk. The police arrived shortly thereafter and later recovered a twenty-dollar bill from the defendant's pocket.

Prior to trial, the State moved to introduce evidence of the defendant's conduct in Gowing's presence in the several days preceding May 18, which culminated in his being taken into protective custody on May 17. In addition the State sought to admit evidence of a threatening remark the defendant made to a police officer after his arrest on the charges in this case. After a hearing and over the defendant's objection, the trial court admitted the evidence under New Hampshire Rule of Evidence 404(b), ruling that the evidence was relevant to show the defendant's state of mind, his motive and malice towards Gowing, Gowing's state of mind, and the relationship of the parties.

The evidence of prior bad acts committed by the defendant was introduced at trial through the testimony of Gowing and her friend, Laura Clough. Gowing testified that on May 15 she had been driving the defendant around, helping him look for an apartment. When they

returned to the shelter, the defendant became angry, tore a stair railing off, smashed his glasses, raked a pocket comb on his arm, rocked the car, and said he wanted to drive her car alone so that he could wreck it and kill himself. Clough also testified about this conduct by the defendant. In addition, Gowing testified that on the night of May 17, after the defendant had been unsuccessful in an attempt to borrow a truck to help her move, he engaged in violent behavior at her apartment. According to Gowing, the defendant again cut his arm with the teeth of a comb, smashed some of her glasses, and put a knife to his throat, saying he would kill himself. Then he slashed his bicycle tire and threw the bike down the stairs. He also came into Gowing's bedroom and threatened her with a knife. Laura Clough, who was at Gowing's apartment that night, testified that the defendant threw his pack in Clough's face, threatened to kill both women, broke a knife with his hands, and cut himself with a piece of broken glass, saying he liked blood. Eventually Clough left the apartment and summoned the police, and the defendant was taken into protective custody for the night.

■■ The subsequent bad act evidence was introduced through the testimony of Keene Police Officer Steven Tenney, who arrested the defendant on the instant charges and took him into custody. Officer Tenney testified that while interviewing the defendant at the station, the defendant recounted in detail how he had once threatened a Maine State Trooper with a shotgun and then blew his head off. Hearing this, Officer Tenney testified, put him "a little more on guard towards [the defendant]." With respect to this testimony, the trial court instructed the jury that the parties had stipulated that the State had no evidence that such a shooting had occurred.

Rule 404(b) provides:

> "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

Before admitting such evidence, the trial court must determine its relevance for a purpose other than proving character or disposition, that clear proof exists that the defendant committed the other acts, and that the prejudice to the defendant from admitting the evidence does not substantially outweigh its probative value. *State v. Hastings*, 137 N.H. 601, 603–04, 631 A.2d 526, 528 (1993). The trial court's

ruling is reviewable only for an abuse of discretion, reversible only if "clearly untenable or unreasonable to the prejudice of [the defendant's] case." *Id* at 604, 631 A.2d at 528 (quotation omitted). Here, the defendant challenges the trial court's decision with respect to the first and third prongs of the test for admissibility.

█ The defendant was charged with simple assault, theft, and two alternative counts of criminal threatening. As the offenses were charged in the complaints, the State had the burden to prove beyond a reasonable doubt that the defendant knowingly caused unprivileged physical contact with Gowing, *see* RSA 631:2-a, I(a) (1986), that he took twenty dollars from her with a purpose to permanently deprive her of it, *see* RSA 637:3 (1986), that he threatened to kill Gowing with a purpose to terrorize her, *see* RSA 631:4, I(b) (1986), and that he placed her in fear of imminent bodily injury or physical contact by his conduct, *see* RSA 631:4, I(a) (1986). Evidence of the defendant's threatening behavior towards Gowing, and towards Clough in Gowing's presence, in the immediately preceding days was relevant to and probative of his intent towards Gowing and her own state of mind at the time of the charged offenses. Such evidence made it more probable than not that the defendant on the later occasion acted with an intent to terrorize her and that those actions placed her in fear for her physical safety. His previous menacing behavior towards her also tended to show that when he kept her twenty dollars, he did so with the intent to deprive her of it permanently. Thus, while the prior acts evidence may have demonstrated the defendant's propensity for violent behavior, it was relevant to his intent to act towards this particular victim in an intimidating manner. *Cf. State v. Simonds*, 135 N.H. 203, 207, 600 A.2d 928, 930 (1991).

█ The defendant argues that, whatever may have been the relevance of this evidence for a permissible, non-propensity purpose, its prejudice substantially outweighed its probative value. We accord considerable deference to the trial court's determination in balancing prejudice and probative worth of evidence under Rule 404(b). *State v. Tarsitano*, 134 N.H. 730, 735–36, 599 A.2d 474, 477 (1991). Particularly pertinent to determining this balance is whether the evidence is relevant to prove an issue that is actually in serious dispute. *Id.* at 735, 599 A.2d at 477.

█ With respect to the theft charge the defendant did not claim that the act did not occur, but rather defended on the theory that he lacked a purpose to permanently deprive Gowing of the twenty dollars. In his opening statement, defense counsel stated that the de-

fendant merely meant to hold on to the money until Gowing returned his property to him, and thus lacked a specific intent to deprive her of it permanently. By arguing to the jury that he had acted innocently, the defendant placed his intent squarely at issue, *see State v. Gruber*, 132 N.H. 83, 89–90, 562 A.2d 156, 160 (1989), and evidence of his previous threatening behavior towards Gowing was not substantially more prejudicial than probative of his intent to permanently deprive her of her property. The evidence was therefore admissible to prove the charge of theft, and there was no abuse of discretion in the trial court's ruling permitting its introduction at trial. Because of this holding we need not decide whether the evidence was also admissible to prove the assault and threatening charges, to which the defense was a complete denial that the acts occurred. *See generally United States v. Colon*, 880 F.2d 650, 657 (2d Cir. 1989) (intent not truly in dispute when defendant claims acts did not occur, rather than that he acted innocently or mistakenly). We note that the trial court gave the jury a limiting instruction regarding the permissible uses of the prior acts evidence.

Additionally with respect to his prior acts, the defendant argues that the evidence of his removal to protective custody on May 17, the night before the alleged offenses, was improperly admitted. The reference to the defendant's overnight stay in jail came during Gowing's testimony, when she stated that, after Clough left to summon the police, Gowing left her apartment with a bag of trash, the defendant followed her out, and the police arrived and took him to the station. While the relevance of this evidence to any issue in the case may be minimal at best, the defendant has not demonstrated that its introduction was clearly untenable or unreasonable to the prejudice of his case.

The evidence of the defendant's subsequent implied threat to a police officer stands on a different footing. In *State v. Hastings*, 137 N.H. 601, 631 A.2d 526, we established a standard for the admissibility of subsequent bad act evidence to prove a defendant's state of mind. We held that for subsequent bad act evidence to satisfy the relevancy prong of our three-pronged test, the act must be fairly close in time and in some significant way connected to material events constituting the crime charged. *Id.* at 605, 631 A.2d at 529.

That the defendant on a later occasion threatened a police officer is in no way connected with the charges arising from his conduct with Gowing. The only connection is the putative similarity of the activity. Arguing to the trial court that the evidence was relevant to the defendant's state of mind, the prosecutor stated: "It's an attempt to

intimidate the police officers . . . . He picks his statements. He picks his manipulations carefully to fit whatever scenario is before him." Thus, the express rationale for seeking to introduce the evidence was to show that the defendant tends to intimidate and threaten people. In ruling to admit the evidence, the trial court indicated its adoption of the State's theory of admissibility:

"[T]he defense is these things never happened and the State was presenting a case, the theory of which is the defendant is trying to intimidate people with threats or violence and that he had been doing that and that therefore, what happened, these acts which are alleged did in fact occur . . . ."

■ Proof that the defendant acted threateningly on one occasion to prove that he acted threateningly on another is evidence of propensity, pure and simple, *see State v. Blackey*, 137 N.H. 91, 96, 623 A.2d 1331, 1334 (1993); calling it relevant to prove "state of mind" does not make it so. *See Hastings*, 137 N.H. at 606, 631 A.2d at 530. We hold that the evidence of the defendant's subsequent threat, relevant only for the impermissible purpose of showing the defendant's disposition toward threatening behavior, was inadmissible and its introduction at his trial an abuse of discretion.

We note that the dissent believes that the evidence at issue "fits squarely within the *Hastings* standard." It reaches this conclusion, however, by ignoring the *Hastings* requirement that the subsequent act be significantly connected to material events constituting the charged crime and instead focusing only on the act's temporal proximity. Closeness in time, however, is not alone enough to establish the relevance of subsequent act evidence. *See Hastings*, 137 N.H. at 605, 631 A.2d at 529.

Furthermore, we are not convinced that the introduction of this evidence was harmless error. Officer Tenney testified that, after taking the defendant into custody,

"[the defendant] said that he had been constantly harassed by a Maine State Trooper and that he had told the state trooper that if it continued, that he was going to blow his head off. He said he went home and took his father's double shotgun, sawed it off to about 18 inches. He loaded it with one round of buckshot and one round of slug. He said about a week later the same trooper came to his house. He said he picked up the shotgun. He called it 'Old Betsy' and put it behind his back and he walked outside, met the trooper and he told the trooper that he was going to blow his head off

> and the trooper said to him, 'You won't have enough time to get back in the house to get the gun.' And he said, 'I won't have to.' And he said he pulled the gun and pulled both barrels at the same time, hitting the trooper in the head and he said he 'blew his cocksucker off.'"

In our view, the defendant's graphic boasting about killing a police officer was so inflammatory that we cannot say beyond a reasonable doubt that it had no effect on the jury's verdict.

The defendant's remaining argument relative to the trial court's evidentiary rulings concerns the testimony of Officer Shawn Leslie, present when the defendant was arrested, that he recognized the defendant "through past dealings." Contending that this evidence was introduced in violation of a pretrial order excluding evidence of his prior criminal record, the defendant argues that the trial court abused its discretion in failing to grant his motion for a mistrial.

▮▮ To justify a mistrial, the defendant must show that he has been irreparably harmed by the allegedly damaging testimony. *State v. Ellison*, 135 N.H. 1, 4, 599 A.2d 477, 479 (1991). We afford the trial court broad discretion to determine the need for a mistrial in such circumstances. *Id.*, 599 A.2d at 480. The trial court observed that the officer's testimony was not specific and that previous testimony had indicated that the defendant had only recently been at the police station in protective custody. We hold that no substantial and irremediable prejudice was demonstrated and that the motion for mistrial was therefore properly denied.

▮ Finally, the defendant argues that the evidence was insufficient to support his conviction for theft because the State failed to prove beyond a reasonable doubt that his purpose was to permanently deprive Gowing of her property. To prevail on appeal, the defendant must show that, viewing the evidence in the light most favorable to the State, no rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Evans*, 134 N.H. 378, 383, 594 A.2d 154, 158 (1991).

Gowing testified that when she first asked the defendant for her money, "he gave it back but he didn't give back all of it." She then asked him, "'Did you give me all the money?' And he said, 'Yes.'" She asked to look inside the pack to see for herself, to which the defendant responded, "'Why? Don't you trust me?'" She then managed to see a folded bill inside. According to her testimony,

> "I said to him, 'You've got my money in there. I want it back.' That may not be a direct quote, but something to that

effect and he said, 'What kind of bill is it?' In effect, what kind of denomination. I had some hundreds, hundred dollar bills and I made a stab. I said, 'It's a hundred dollar bill.' He took it out and showed me it was a 20. He said, 'It's not.' As if that was proof that it wasn't my money because at this point and during this confrontation I hadn't actually counted my own money because of what was going on in the confusion of the situation."

The defendant's assaultive conduct and criminal threatening occurred immediately after this exchange.

The defendant focuses his argument on Gowing's admission that she stated to the police on the day of the incident, "'When I told him I wanted the rest, he said that he gave it all to me, but I saw at least 20 more dollars. I said I wanted it. *He said he was going to keep it because his stuff was in my car.*'" (Emphasis added.) According to the defendant, this testimony demonstrates that the defendant was retaining Gowing's property only until she returned his, thereby negating the element of the defendant's intent to permanently deprive her of the property.

Even assuming that the statement to Gowing — that he would keep the money "because his stuff was in [her] car" — indicates the absence of an intent to withhold the property permanently, the jury was free to disbelieve it. *Cf. State v. Baker*, 135 N.H. 447, 450, 606 A.2d 309, 311 (1992). When first asked, the defendant denied having any more of her money. Only when pressed did he give the above-quoted explanation for holding on to it. After he pulled the twenty-dollar bill out of the pack and showed it to Gowing, the defendant retained control of it. He did not return it to her, even though he eventually removed his belongings from her car. It was later found in his pants pocket at the police station. The jury could reasonably infer that, notwithstanding his statement to Gowing, the defendant did not intend to return the money. The evidence was sufficient to warrant a finding of guilt on the theft charge beyond a reasonable doubt.

*Reversed and remanded.*

THAYER, J., with whom HORTON, J., joined, dissented; the others concurred.

THAYER, J., dissenting: Because I disagree with the majority's holding that the subsequent bad act evidence was inadmissible, I dissent. As the majority notes, we recently held that in order for subsequent bad act evidence to be admissible to prove the defend-

ant's earlier state of mind, the subsequent acts must be fairly close in time and in some significant way connected to the material events constituting the crime charged. *State v. Hastings*, 137 N.H. 601, 605, 631 A.2d 526, 529 (1993). As an aside, the principal case relied upon in *Hastings* to establish this standard for admissibility, *United States v. Watson*, 894 F.2d 1345, 1349 (D.C. Cir. 1990), found acceptable a three-month break between the conduct charged and the subsequent similar conduct that the prosecutor put into evidence to demonstrate the defendant's intent. Here, the defendant's threat to the police officer occurred within hours of the conduct constituting the crime charged.

The instant case fits squarely within the *Hastings* standard. The defendant's attempt to threaten or intimidate the police officer was not, as the majority suggests, connected to the charge only by the "putative similarity of the conduct." On the contrary, as the trial court stated several times in analyzing the admissibility of the evidence under Rule 404(b), the subsequent attempt to intimidate the police officer was related so closely in time to the conduct charged that it was effectively a continuation of the "whole course of conduct from the previous day or so." The trial court thus found the subsequent threats to the police officer relevant to show the defendant's state of mind throughout the course of events.

The defendant's continued tactic of intimidation and threatening may, as the majority suggests, show a propensity of the defendant to engage in threatening conduct. However, as the majority points out in its prior bad act analysis, even where evidence may demonstrate the defendant's propensity to engage in violent behavior, it may be admissible if it is also relevant to show his intent. In this case, the State had to bear the burden to show that the defendant purposely terrorized the victim or placed her in fear of imminent bodily injury or physical contact by the use of threats or physical conduct. *See* RSA 631:4, I(a)–(b) (1986). Particularly where the State must prove that the defendant's conduct was purposeful, we have held that the trial court may have an even stronger justification for admitting evidence pursuant to Rule 404(b) to show the requisite intent. *See State v. Simonds*, 135 N.H. 203, 206, 600 A.2d 928, 930 (1991). In this case, the continued threatening behavior is sufficiently probative of the defendant's state of mind at the time of these ongoing events and of his intent to intimidate and threaten the victim that the trial court did not abuse its discretion in admitting the evidence. *See Hastings*, 137 N.H. at 604, 631 A.2d at 528 (trial court's decision to admit 404(b) evidence will not be overturned absent an abuse of discretion). Fur-

ther, the trial court was within its discretion to find that this relevant evidence was not more substantially prejudicial than it was probative. *See State v. Tarsitano*, 134 N.H. 730, 735–36, 599 A.2d 474, 477 (1991).

HORTON, J., joins in the dissent.