Hillsborough-southern judicial district
No. 92-443

## THE STATE OF NEW HAMPSHIRE

v.

## OTIS F. WHITTAKER, JR.

June 7, 1994

*Jeffrey R. Howard*, attorney general (*John P. Kacavas*, assistant attorney general, on the brief and orally), for the State.

*Craighead and Martin*, of Manchester (*Rodkey Craighead, Jr.* on the brief and orally), for the defendant.

BATCHELDER, J.  The defendant, Otis F. Whittaker, Jr., was convicted of two counts of aggravated felonious sexual assault and one count of possession of cocaine, following a jury trial in Superior Court (*Dalianis*, J.). He appeals only his sexual assault convictions, arguing that the trial court erred in allowing the State, pursuant to New Hampshire Rule of Evidence 404(b), to introduce evidence of a prior sexual assault committed by the defendant. We reverse and remand.

The charges against the defendant stemmed from an incident in Merrimack in March 1991. The victim, Heather D., who had known the defendant and his live-in girlfriend, Patty, for about three years, had gone to the defendant's home one evening to visit Patty. Several others, including the defendant, were present, and the group snorted cocaine. Eventually, Heather joined the defendant in his truck, and they drove off. When the defendant stopped the truck on a dirt road in an area unfamiliar to Heather, he began to make advances. According to Heather, her requests to go home and her attempts to resist went unheeded. Warning her that he did not want to have to "get rough," the defendant removed her clothes and performed multiple acts of intercourse and cunnilingus, after which Heather put on her clothes. He drove to another dirt road, removed her clothing again, forced her to perform fellatio, and again had intercourse, ignoring her verbal resistance. The defendant then left the truck, went to the rear, and returned with something in his hands that he appeared to be attempting to hide. Heather could see that it was some type of rope or cord. The defendant approached the passenger side and told Heather to turn around to face the other way. He became angry when she would not comply and again told her he did not want to "get rough." Frightened, Heather defecated on a blanket she was sitting on, climbed out of the truck through the driver's side and, completely naked, ran towards the highway. She was able to flag down a passing driver, who picked her up and observed that she was crying, frantic, and appeared to be afraid for her life. Seeing a police cruiser on the highway, the driver stopped and Heather reported the assault. The defendant was arrested the next morning and a search of his clothing yielded a straw containing residue of cocaine.

At his trial the defendant admitted engaging in sexual activity with Heather but claimed that it was consensual, denying ever

threatening her or forcing her to have sex. He conceded that he had taken her for a drive "hoping to get lucky." According to his testimony, he was incredulous that she had run naked from his truck to the highway.

Prior to trial the State moved to introduce evidence of a sexual assault committed by the defendant on Lee Ann D. in 1986. The State argued that the evidence was admissible to rebut the defendant's claim of consent, to show a lack of mistake or accident, and to show the defendant's plan or motive. After a hearing at which Lee Ann and her friend Judy B. testified, the trial court ruled that the evidence would be admitted under Rule 404(b) "to show lack of mistake or accident and to show plan and motive."

At trial Lee Ann testified that she had dated and lived with the defendant for several years until 1983, having had a child with him in 1982. One night in 1986, while Lee Ann was at Judy's house, the defendant arrived and asked Lee Ann to ride with him to a store. She did so, and along the way the defendant drove to an area with which she was unfamiliar. He got out of the vehicle and called for her to come out and see something in the back. He tried to force himself on her, while she resisted, and then pushed her down on her stomach, removed her pants, tied her hands and ankles with rope, gagged her, and anally raped her for over an hour. According to Judy, who saw her afterwards, Lee Ann was hysterical and crying, saying that the defendant had raped her. Judy observed scratches and rope burns on Lee Ann and blood on the inside of her pants. Lee Ann testified that she did not report the assault to the police for fear of not being believed, but came forward in 1991 when she read of the defendant's arrest. The defendant denied that the incident occurred.

■■ Rule 404(b) provides:

> "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

Prior bad acts evidence may only be admitted if it is relevant for a purpose other than proving the defendant's character or disposition, if there is clear proof that the defendant committed the prior act, and if the probative value of the evidence is not substantially outweighed by its prejudice to the defendant. *State v. Hastings*, 137 N.H. 601, 603–04, 631 A.2d 526, 528 (1993). The decision admitting such evi-

dence lies within the trial court's sound discretion, an abuse of which will be found on appeal only if the defendant can show "that the ruling was clearly untenable or unreasonable to the prejudice of his case." *State v. Blackey*, 137 N.H. 91, 93, 623 A.2d 1331, 1332 (1993) (quotation omitted). The defendant challenges the trial court's ruling that the evidence of the prior sexual assault was relevant for a purpose other than disposition and that its "probative value [was] greater than its prejudicial effect." We turn first to the relevancy prong.

In order to meet the relevancy requirement, the evidence of the defendant's prior offense "must have some direct bearing on an issue actually in dispute." *Blackey*, 137 N.H. at 95, 623 A.2d at 1333. The trial court admitted the evidence to show plan, motive and absence of mistake or accident. The State on appeal seeks to justify the court's ruling only on the basis of "plan" and its subset, *"modus operandi,"* apparently abandoning the other purposes stated by the trial court. We would not in any event have found the evidence relevant on the abandoned grounds. Where the defendant admitted to sexual activity with Heather and the only issue was whether she consented, his motive was irrelevant. *See State v. Saltarelli*, 98 Wash. 2d 358, 365, 655 P.2d 697, 700 (1982); *cf. State v. Ayer*, 136 N.H. 191, 195–96, 612 A.2d 923, 926 (1992) (where defendant claims defense of consent, State need not prove that defendant actually knew the victim was not consenting). If "motive" means a sexual desire for the victim in this case, the use of "past incidents to show a willingness to force or coerce another person to engage in sexual activity is proof of propensity, not motive . . . ." *Velez v. State*, 762 P.2d 1297, 1301 n.6 (Alaska Ct. App. 1988); *see also Saltarelli*, 98 Wash. 2d at 365, 655 P.2d at 700 ("It is by no means clear how an assault on a woman could be a motive or inducement for defendant's rape of a different woman almost 5 years later."). The same is true if "motive" means a desire to control or assault women. As for absence of mistake or accident, the premise for admitting other crimes evidence on those grounds must be a defendant's *claim* of mistake or accident as a defense, *see United States v. Donovan*, 984 F.2d 507, 512 (1st Cir. 1993); *United States v. Hogue*, 827 F.2d 660, 663 (10th Cir. 1987), and no such claim was made here. Moreover, where the defense is consent and the admitted conduct is unequivocally sexual in nature, there can be no plausible defense of mistake or accident. *See Velez*, 762 P.2d at 1301 n.6.

As for the justification for admissibility on which the State relies on appeal, the State argues that the prior assault was admissible to

show the defendant's plan and thereby rebut his claim of consent in this case. Although "plan" appears as one of the stated permissible purposes of Rule 404(b) prior bad act evidence, the evidence here does not come within that provision.

■ The object of evidence of prior bad acts to show a continuing plan is "to prove the existence of a definite project directed toward completion of the crime in question." 2 J. WEINSTEIN & M. BERGER, WEINSTEIN'S EVIDENCE ¶ 404[16], at 404–98 (1993) (quotation omitted). As one court has explained:

> "A pattern or systematic course of conduct is insufficient to establish a plan . . . . The distinguishing characteristic of the common scheme or plan exception to inadmissibility is the existence of a true plan in the defendant's mind which includes the charged and uncharged crimes as stages in the plan's execution: the series of crimes must be mutually dependent."

*Ali v. United States*, 520 A.2d 306, 311–12 (D.C. 1987); *see also Virgin Islands v. Pinney*, 967 F.2d 912, 916 (3d Cir. 1992) ("plan" means "a situation in which the charged and the uncharged crimes are parts of a single series of events"). Therefore, "it is not enough to show that each crime was 'planned' in the same way; rather, there must be some overall scheme of which each of the crimes is but a part." 22 C. WRIGHT & K. GRAHAM, FEDERAL PRACTICE AND PROCEDURE § 5244, at 509 (Supp. 1993).

As the "plan" exception is thus understood, the evidence at issue here, a five-year-old sexual assault committed in a somewhat similar manner on another person, does not constitute evidence of a plan to commit an assault on the victim here. While it may in fact show a propensity or predisposition to commit the same offense, that is the precise purpose, under Rule 404(b), for which it may *not* be used. The following illustration of the distinction between a plan and a predisposition makes this plain:

> "Evidence that a judge has always affirmed the admission of evidence of other crimes may show his predispositions, but except for people who are into conspiracy theories it would hardly be considered proof of a plan. If the judge bought a rubber stamp reading 'There was no error in admitting the evidence under Rule 404(b),' the inference of a plan would be more plausible."

22 C. WRIGHT & K. GRAHAM, *supra* § 5244, at 511 n.6. The prior assault was thus not admissible as proof of a "plan."

■ Nor is the State's *modus operandi* theory of admissibility any more availing. That a prior offense and a charged offense were committed in a unique manner so as to bear the "signature" of the defendant may be relevant to show a defendant's *modus operandi*, *see* 2 J. WEINSTEIN & M. BERGER, *supra* ¶ 404[16], at 404–100, and thereby tend to prove identity, *see United States v. Williams*, 985 F.2d 634, 637 (1st Cir. 1993). Here, however, the identity of the alleged perpetrator is not at issue. The question is not who assaulted Heather but rather whether she consented to a sexual encounter with the defendant. Proof of *modus operandi* is therefore irrelevant. *See Velez*, 762 P.2d at 1300–01.

The State argues that the relevance of the prior offense in proving a plan or *modus operandi* is in its tendency to disprove the defendant's consent defense. The only theory by which this evidence can be relevant, however, is based on an inference that because the defendant previously engaged in forcible sexual conduct, the charged conduct was likely forcible as well. Notwithstanding the labels attached by the State, this is nothing more than proof of propensity or disposition, forbidden under Rule 404(b). *See State v. Richardson*, 138 N.H. 162, 168, 635 A.2d 1361, 1365 (1993); *Blackey*, 137 N.H. at 95, 96, 623 A.2d at 1333, 1334. As one court explained in a similar case:

> "[T]he crime was not of the sort, like a stock swindling scheme or murder for insurance, where the commission of other crimes may tend to establish a plan from which the crime charged can be said to have resulted. The accused had admitted that he had had prosecutrix out in his car on the occasion in question and she had testified that he had ravished her at that time. There was no suggestion that anyone else had ravished her . . . . [T]he only question was whether he had had carnal knowledge of her forcibly and against her will. The fact, if it was a fact, that he had ravished another woman some weeks before, threw no light whatever on that question. It showed merely that he was a bad man, likely to commit that sort of crime; and this is precisely what the prosecution is not allowed to show in a criminal case."

*Lovely v. United States*, 169 F.2d 386, 388 (4th Cir. 1948). The evidence of the prior offense was inadmissible and its introduction an abuse of discretion.

Whether the introduction of this evidence was harmless error presents a more difficult question. The State is correct in characterizing the victim's testimony as detailed and compelling. Additionally, the nature of the verdicts must be considered: whereas the jury deliber-

ated on four separate counts of aggravated felonious sexual assault arising out of the incident with the victim, the defendant was convicted of only two and acquitted of the others. This demonstrates, argues the State, that the inadmissible evidence did not affect the verdict because the jury apparently took pains to study only the evidence relating to the charged acts. The argument on the other side, however, is that without the evidence of the defendant's propensity to commit forcible sexual acts, the jury might have accepted his consent defense and acquitted him of all four offenses; the fact of two acquittals, it could be argued, might suggest that the State's case against the defendant was less than overwhelming.

■■ To find the introduction of inadmissible evidence to be harmless error we must be convinced beyond a reasonable doubt that it did not affect the verdict. *See Hastings*, 137 N.H. at 606, 631 A.2d at 530. In the context of this case, we must be able to conclude beyond a reasonable doubt that the jury would have convicted the defendant without the evidence tending to show he was a rapist. We are not so convinced. The graphic testimony about the prior incident showed the commission of a brutal and sadistic assault. It was linked with the charged offense by the prosecutor in his closing, when he argued to the jury the similarities between the two incidents and stated: "These points line up, ladies and gentlemen. These points show how he lures women to secluded locations and how he isolates them at that point." Viewing the evidence in this case in its entirety, we cannot hold the error in admitting the prior bad act evidence harmless. *See Richardson*, 138 N.H. at 168–69, 635 A.2d at 1365–66 (inadmissible testimony "so inflammatory" we cannot say beyond a reasonable doubt it had no effect on verdict). The defendant is entitled to a new trial on the sexual assault convictions.

*Reversed and remanded.*

HORTON, J., with whom THAYER, J., joined, dissented; the others concurred.

HORTON, J., dissenting: Evidence of a prior bad act, under New Hampshire Rule of Evidence 404(b), is excluded where the prior act is relevant *only* because it shows the defendant's bad character. If the defendant's prior act, however, is *also* relevant for a purpose other than proving character, the evidence is not automatically excluded. *United States v. Rubio-Estrada*, 857 F.2d 845, 846–47 (1st Cir. 1988); *cf. State v. Richardson*, 138 N.H. 162, 166, 635 A.2d 1361, 1364 (1993).

In the case at hand, the State offered the prior rape for a purpose other than showing the defendant's bad character; namely, as proof of a plan to engage in non-consensual sex in a particular manner. I take issue with the majority's assertion that the definition of "plan" is limited to a mutually dependent series of events. If this were so, independent prior bad acts that are relevant to and probative of the defendant's plans at the time of the current alleged assault would have to be excluded. In the instant case, for example, if the defendant had tied the victim with ropes during the assault, in a manner identical to the prior bad act, the majority view would still exclude the prior act, labeling it "irrelevant" on the issue of whether the defendant planned to force the victim to engage in a particular form of non-consensual sex. The majority would thus preclude a determination of whether the probative value of the defendant's "plan" to commit the assault in a particular manner was substantially outweighed by the danger of unfair prejudice. Such an automatic exclusion of undeniably relevant evidence contradicts our established precedent in this area. *See State v. Tarsitano*, 134 N.H. 730, 735, 599 A.2d 474, 477 (1991) (highlighting the three-pronged test to determine the admissibility of the prior bad act); *cf. State v. Simonds*, 135 N.H. 203, 207, 600 A.2d 928, 930 (1991) (upholding the admission of evidence of prior sexual contact with the victim as probative of the defendant's intent at the time of the alleged assault).

I would not define "plan" so narrowly. The battle was joined on the issue of consent for the sexual acts. The existence of a plan to bring about non-consensual sex as proven by a unique set of circumstances is material and relevant to the issue of whether the sexual encounters were consensual or non-consensual. *See State v. Hill*, 450 P.2d 696, 697 (Ariz. 1969); *People v. Oliphant*, 399 Mich. 472, 488–94, 250 N.W.2d 443, 450–51 (1976); *State v. Morrison*, 310 N.W.2d 135, 137 (Minn. 1981); *Williams v. State*, 110 So. 2d 654, 662 (Fla.), *cert. denied*, 361 U.S. 847 (1959).

We have before us an alleged criminal act where the evidence could be found to show that the defendant planned to, and did, use a pretext to get the victim into his vehicle and then transport the victim to a remote spot for the purpose of non-consensual sex, and was planning to use a rope to immobilize the victim while he continued the assault. In addition, because of the unique circumstances of privacy and seclusion surrounding the commission of the sexual acts at issue, witness credibility played a central role. *State v. Fears*, 688 P.2d 88, 90 (Or. Ct. App.), *review denied*, 691 P.2d 482 (Or. 1984); *see also Carey v. State*, 715 P.2d 244, 248 (Wyo.), *cert. denied*, 479 U.S. 882

(1986). The defendant says that sex may have been on his mind, but certainly not the non-consensual variety. Proof of a plan would be very probative to rebut this claim. Evidence of a prior incident where the defendant used a pretext to induce a woman to enter his vehicle, drove to a remote place, restrained her with a rope, and indulged in non-consensual sex, is such proof. Although reasonable minds may differ on whether the probative value of this evidence is substantially outweighed by the danger of unfair prejudice to the defendant, it seems incomprehensible to me to preclude this analysis by labeling the evidence inadmissible on relevancy grounds. Because, in my view, the trial court properly admitted the prior bad act, I respectfully dissent.

THAYER, J., joins in the dissent.