Rockingham
No. 94-081

THE STATE OF NEW HAMPSHIRE

v.

PAUL T. CARTER

August 9, 1995

*Jeffrey R. Howard,* attorney general (*Janice K. Rundles,* senior assistant attorney general, on the brief and orally), for the State.

*David M. Rothstein,* assistant appellate defender, of Concord, by brief and orally, for the defendant.

JOHNSON, J. Following a jury trial in the Superior Court (*Coffey,* J.), defendant Paul T. Carter, an eighth grade teacher, was convicted under RSA 632-A:2, X-a (Supp. 1986) (amended 1992) of three counts of aggravated felonious sexual assault against one of his former students. RSA 632-A:2, X-a prohibits sexual penetration with a person between the ages of thirteen and eighteen if "the actor is in a position of authority over the victim and uses this authority to coerce the victim to submit." On appeal, Carter argues that the record lacks sufficient evidence of authority or coercion to support his convictions. He also asserts insufficient evidence to prove that he

committed the sexual acts within the time frame alleged in the indictments. We affirm.

*I. Position of Authority*

■ Carter contends that the evidence fails to support a finding that he was in a position of authority over the victim at the time of the sexual acts. "To prevail on appeal, the defendant must show that, viewing the evidence in the light most favorable to the State, no rational trier of fact could have found guilt beyond a reasonable doubt." *State v. Richardson*, 138 N.H. 162, 169, 635 A.2d 1361, 1366 (1993). We find ample evidence to support a jury finding on the issue of Carter's authority over the victim.

Carter met the victim while she was a student at Spaulding Junior High School in Rochester. He was the victim's eighth grade English teacher during the 1984-85 school year and later her lunch monitor and hall monitor. It was in his capacity as hall monitor that he began to develop an intimate relationship with her.

The sexual acts at issue occurred in the fall of 1987, when the victim entered Spaulding High School. The high school adjoins the junior high school; the schools are separated by only a football field and some parking space. Moreover, some high school activities take place at the junior high school, and students taking part in these activities are subject to the authority of hall monitors there.

Carter argues that his convictions are unsustainable because the victim was not his student during the fall of 1987. Carter's contention, however, assumes an unjustifiably narrow construction of RSA 632-A:2, X-a. RSA 632-A:2, X-a criminalizes sexual penetration with a person between the ages of thirteen and eighteen when "the actor is in a position of authority over the victim and uses this authority to coerce the victim to submit." The Criminal Code contains no statutory definition of "authority," but WEBSTER'S defines the term broadly: "power to require and receive submission: the right to expect obedience: superiority derived from a status that carries with it the right to command and give final decisions." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 146 (unabridged ed. 1961); *cf.* RSA 21:2 (1988); RSA 625:3 (1986); *State v. Collins*, 129 N.H. 488, 490, 529 A.2d 945, 947 (1987).

■ Using this common definition of the term "authority," a rational jury could have concluded that Carter was in a position of authority over the victim at the time of the sexual acts in the fall of 1987. Viewed in the light most favorable to the State, *Richardson*, 138 N.H. at 169, 635 A.2d at 1366, the evidence supports a finding that Carter's authority over the victim continued even after her

departure from the junior high school where he taught. The proximity of the high school and the involvement of its students in activities at the junior high school support the inference that a junior high school teacher had "the right to expect obedience" from a high school student. WEBSTER'S, *supra.*

We reject Carter's suggestion that a teacher lacks authority over a student unless the teacher can affect the student's grades. The power to grade is not the only weapon in a teacher's arsenal, nor the only proof of authority. The victim testified to the disciplinary prerogatives of a junior high school hall monitor over a senior high school student. She also described a telling incident after she had broken off the physical aspect of her relationship with Carter. The victim had visited Carter at school to discuss a boyfriend with him, and when the conversation ended, Carter pinned her against a wall and tried to kiss her. She reacted by striking him. She testified to her fear of then being expelled, equating teachers with police officers: "you don't hit police officers, you don't hit teachers." A rational jury could have concluded that at the time of the sexual acts, Carter had the "power to require and receive submission [and] the right to expect obedience" from the victim. WEBSTER'S, *supra.*

## II. Coercion

We also hold that a rational jury could have concluded that Carter used his position of authority to coerce the victim into submitting to the sexual acts. In *State v. Collins*, we recognized that coercion in this context can include "the subtle persuasion arising from the position of authority," *Collins*, 129 N.H. at 490, 529 A.2d at 946; that is, "undue influence and psychological manipulation," *id.* at 490, 529 A.2d at 947. The record of Carter's trial is replete with evidence of such coercion.

In Carter's statement to the police, he characterized the victim as a "very introverted" girl who could be "moody [and] emotional at times." In describing the nature of his relationship with her, he stated: "She would come in after school, spend a lot of time hanging around and talking. She didn't have a father and I always got the feeling that she was looking for some male figure to talk to, you know, kind of fill that void." The victim's relationship with her mother, he said, was "very volatile." Construing this evidence in the light most favorable to the State, *Richardson*, 138 N.H. at 169, 635 A.2d at 1366, a jury could infer that Carter knew of the victim's vulnerability and the potentially great influence over her his position as a teacher afforded him.

The victim's testimony supports a finding that Carter used this knowledge to manipulate her and pursue a plan of seduction. Carter started developing an intimate relationship with the victim while she was in junior high school. He was a hall monitor and encountered her often during the 1986-87 school year as she "wander[ed] the hall[s]." Instead of sending her to her classroom or the office, Carter talked with the victim and allowed her to remain out of class. He probed the details of her home life and told her of his marital troubles. Soon he began to drive her home from school, continuing the intimate level of their conversations and peppering them with sexual jokes and references.

Eventually, Carter started pressuring the victim for a physical relationship. He declared his love for her and started holding her hand. The first time he tried to kiss her was in her mother's garage. She testified:

> [O]nce he tried to hug me, made me very uncomfortable, and I hugged him and, you know, kind of pulled away. And once—you know, it's after—after he had gotten that far, he tried to kiss me and I remember, you know, turning my head and ducking away and just being really confused, you know. I really—I loved talking with him. I loved being with him. I didn't have any friends and to have him—to be able to have someone that I could talk to and just say how frustrating things were with school and my mother, you know, it was like a godsend, but then to have him try to kiss me, it was—you know, I was very—it was a very confusing thing. So, I pulled away at that point and, you know, broke off and went into the house, broke off the conversation.

Despite the victim's reaction, Carter persisted, driving her to a secluded area twice a week, continuing his sexual banter, and "gradually push[ing] for other things." When the school year ended in the summer of 1987, Carter maintained contact by hiking alone with her, taking her swimming with his children, and having her spend the night at his house after baby-sitting. By the end of the summer, their relationship was a sexual one. The victim testified that she addressed her former teacher as "Mr. Carter" during their sexual encounters.

■ Viewing all of this evidence in the light most favorable to the State, *Richardson*, 138 N.H. at 169,. 635 A.2d at 1366, we hold that a rational jury could have concluded that Carter used his position of authority to coerce the victim through undue psychological influence into submitting to the sexual acts. *Cf. State v. Kulikowski*, 132 N.H.

281, 285, 564 A.2d 439, 442 (1989) (where State sought to prove coercion by threatening, coercion may be shown where threat is "implicit, arising from earlier incidents"); *State v. Johnson*, 130 N.H. 578, 582, 547 A.2d 213, 215 (1988) (affirming trial court finding that "'evidence of coercion under some circumstances is the result of a prolonged series of events between two individuals'").

*III. Time of Assaults*

■ Carter argues that the record contains insufficient evidence to support a finding that the sexual acts took place within the time frame specified in the indictments, April through October 1987. "Time is not an element of aggravated felonious sexual assault." *State v. Williams*, 137 N.H. 343, 346, 629 A.2d 83, 85 (1993). If, however, the State alleges a particular time frame, it "has the obligation to prove that the offense occurred within that time frame *when the defendant asserts a defense based on lack of opportunity within that time frame.*" *Id.* (emphasis added). At trial, the court ruled that *Williams* applied and instructed the jury accordingly. The jury convicted Carter, thereby finding that the acts occurred within the time frame alleged.

■ On appeal, Carter argues that the evidence was insufficient to support this finding. The State counters that it was under no obligation to prove that the sexual acts occurred within the specified time frame because Carter did not present a true time-based defense. We agree. Carter did not introduce any evidence tending to show a lack of opportunity during the months in question and made no such argument to the jury. Instead, he offered evidence that served mainly to impeach certain aspects of the victim's testimony. For example, Carter's wife testified that she did not spend a night away from her husband during the time in question, contrary to the victim's assertion. The extensive descriptions she gave of her various activities outside their home, however, would have seriously discredited any argument that Carter lacked the opportunity to commit the assaults. Carter did not "assert[] a defense based on lack of opportunity within th[e] time frame" specified by the State. *Id.* Accordingly, the State was not required to prove the time of the assaults.

*Affirmed.*

All concurred.