Grafton
No. 99-679

THE STATE OF NEW HAMPSHIRE

v.

FREDERICK J. FULLER

November 20, 2001

*Philip T. McLaughlin,* attorney general (*Stephen D. Fuller,* assistant attorney general, on the brief and orally), for the State.

*Gabriel Nizetic,* of Plymouth, by brief and orally, for the defendant.

NADEAU, J. The defendant, Frederick J. Fuller, appeals his conviction on two counts of criminal threatening. *See* RSA 631:4 (Supp. 2000). He argues that: (1) the Trial Court (*Fitzgerald,* J.) did not properly define "with purpose to terrorize" in its jury instructions; (2) the State did not present sufficient evidence that he threatened the victim with a purpose to terrorize him; (3) the trial court erroneously admitted a witness's written statement to the police as a prior consistent statement; and (4) the defendant was not properly identified at trial. We reverse and remand.

The following facts are supported by the record. The defendant owns Fuller Ford in Bristol. The victim, Robert Solomon, was an employee of Fuller Ford. Tension existed between the defendant and Solomon, which arose out of the defendant's alleged romantic relationship with Solomon's wife, another employee of Fuller Ford. Solomon took a leave of absence on February 23, and returned to work on March 3, 1999.

That morning, a woman called Fuller Ford and spoke with Solomon's co-worker, Donald Downes. She told him that she had seen the defendant and Mrs. Solomon driving together on Route 93. Downes told Solomon this when he arrived at work.

Solomon testified that because March 3 was his first day back at work after a leave of absence and he was unable to reach the defendant by telephone, he called the defendant's wife to report that he had returned to work. He also informed her that he had just received a telephone message from a woman who told him that the defendant and Solomon's wife had been seen driving together. The defendant's wife became upset and called the defendant on his cell phone. They argued, and hung up on one another.

A few minutes later, the defendant called Solomon. According to Solomon,

> [the defendant] asked me if I called his wife, and I answered him yes, and he said that when he got back that he was going to beat the shit out of me and pound my face to a pulp and that if I ever contacted [his daughter] or [son] again, that he would [expletive] kill me.

After some further discussion, the defendant told Solomon that since he hired him, he could fire him, and that when he returned he was going to remove Solomon bodily from the dealership "and "throw [him] out so everybody could see." According to Solomon, the defendant was shouting

when he said all of this, and the words caused Solomon to feel very intimidated.

The defendant testified that he never told Solomon that he was going to "beat him to a pulp." However, he did admit:

> I was a little upset with the fact that he had called my wife, and it wasn't the first time he had called my wife and got her upset and she called me, and it just becomes a big circle. And I just explained to him that, you know, if he called her or, you know, had any more contact with [my son] ... then the next time I would change his face or beat the shit out of him or something.

The defendant was charged with criminal threatening based upon three statements he allegedly uttered to Solomon during the cell phone conversation. Following a jury trial, the defendant was found not guilty of threatening Solomon by telling him that he would kill him if Solomon ever contacted his wife or son again. The defendant was, however, found guilty of having threatened Solomon by saying that he was going to "beat the shit out of him," and "beat him to a pulp."

The defendant argues that the trial court improperly defined "purpose to terrorize" in its jury instructions. The trial court instructed the jury that

> [a] person has a purpose to terrorize another when he seeks to cause alarm, fright, dread, or the state of mind which is induced by the apprehension of hurt from some hostile or threatening event. The fact that a defendant has some goal beyond terrorizing another is not a defense, if he intended to accomplish that further goal by terrorizing the other person.

Soon after the jury began to deliberate, it sent a written question to the court asking, "What is the definition of '[t]o terrorize'? Can we interpret it to mean intimidate?" The trial court responded to the first question by repeating its previous instruction, and did not answer the second question.

A challenge to a jury instruction "must be evaluated by reading the alleged offending portion in the context of the trial court's whole charge. Reversal is not warranted unless the charge, as a whole, does not fairly cover the issues of law of the case." *State v. Marti*, 143 N.H. 608, 617 (1999) (quotations and citations omitted).

RSA 631:4, I (d) (Supp. 2000) provides that a person is guilty of criminal threatening when he or she "threatens to commit any crime against the person of another with a purpose to terrorize any person ...." The parties agree that the word "terrorize" is not defined in RSA chapter 631. The defendant argues that: (1) the purpose of RSA 631:4, I (d) is to prohibit

people from threatening to commit a crime with the purpose of instilling extreme or intense fear in another; (2) the words "alarm, fright, dread or hurt" used by the trial court are "lesser variants of terror"; and (3) therefore, the jury was not properly instructed on the required level of intent. We agree.

■ We have not articulated a specific meaning for the phrase "purpose to terrorize." Several jurisdictions have held that the phrase "intent to terrorize" means more than an intent to put someone in fear. Courts have variously construed "terror" to mean an extreme fear or fear that agitates the body or mind, *Armstrong v. Ellington*, 312 F. Supp. 1119, 1126 (W.D. Tenn. 1970); *Musgrove v. State*, 519 So. 2d 565, 583 (Ala. App. 1986); *Com. v. Sullivan*, 409 A.2d 888, 890 (Pa. Super. 1979), "extreme fear," *State v. Schweppe*, 237 N.W.2d 609 (Minn. 1975), a "high degree of fear," or a state of "intense fright or apprehension," *State v. Claypoole*, 457 S.E.2d 322, 324 (N.C. App. 1995). These definitions reflect a universal recognition among courts that "terror" means more than "alarm," "fright," "dread," or "the apprehension of hurt." In light of the case law, we hold that in order for a jury to conclude that a defendant had a purpose to terrorize, the jury must conclude that the defendant had a purpose to cause extreme fear.

■ In light of this holding, we conclude that the charge did not fairly cover the issues of law in the case because the trial court's definition of "to terrorize" allowed the jury to find the defendant guilty of criminal threatening even if he did not possess the level of intent required by law. *See Marti*, 143 N.H. at 617.

The defendant next argues that the evidence did not sufficiently establish that his intent was to terrorize the victim. We address this argument because if the evidence was insufficient to support the conviction, the Double Jeopardy Clauses of both the New Hampshire and United States Constitutions would preclude a new trial. *See State v. Shannon*, 125 N.H. 653, 667 (1984).

■ In order to prove the defendant guilty of criminal threatening, the State was required to prove beyond a reasonable doubt that the defendant threatened the victim with a purpose to terrorize him. *See* RSA 631:4, I (d); *State v. Richardson*, 138 N.H. 162, 166 (1993). To prevail on appeal, the defendant must show that, viewing the evidence in the light most favorable to the State, no rational trier of fact could have found guilt beyond a reasonable doubt. *See Richardson*, 138 N.H. at 169.

■ A defendant's intent must often be proved through circumstantial evidence, *see State v. Laudarowicz*, 142 N.H. 1, 4 (1997), and the jury is entitled to infer the requisite intent from the defendant's conduct in light of all the circumstances in the case. *See State v. Meloon*, 124 N.H. 257, 259 (1983). We conclude from our review of the record that the State presented sufficient evidence for a reasonable jury to conclude beyond a reasonable doubt that the defendant threatened the victim with a purpose to terrorize him.

Evidence of the events leading up to the telephone call would allow a reasonable jury to conclude that the defendant's purpose when he threatened Solomon was to terrorize, not merely to express transitory anger. There was evidence that the defendant was having an extramarital affair with Solomon's wife, and that there had been a number of altercations between the defendant's family and Solomon's family. There was also evidence that the defendant and his wife had a heated telephone conversation immediately after Solomon called her and reported that the defendant and Solomon's wife had been seen driving together, and that the defendant knew that Solomon had called his wife. A jury could reasonably have concluded that the defendant's intent when he threatened Solomon was to instill extreme fear in him.

The defendant argues that the evidence was insufficient because he testified that he did not tell the victim that he would "beat the shit" out of him or that he would "beat him to a pulp," and his statement that he would kill the victim if he ever called his wife or son again was a "conditional threat." The victim testified, however, that the defendant did state that he would "beat the shit" out of him and that he would "beat him to a pulp" upon the defendant's return to Fuller Ford. The jury apparently found the victim's testimony credible, a finding we will not overturn. *See State v. Hodgdon*, 143 N.H. 399, 404 (1999). These statements were not conditional, and would support a conviction. We therefore need not address the defendant's argument that he could not have been convicted because his threat regarding the victim's contact with his wife and son was conditional.

■ Equally unpersuasive is the defendant's argument that the victim's conduct after he received the phone call undermines his assertion of fright and supports the conclusion that the defendant did not intend to terrorize.

The law does not require that the jury find that a victim of criminal threatening was actually placed in fear in order to convict. *See* RSA 631:4, I (d) (Supp. 2000); *see also State v. Saltzman,* 458 N.W.2d 239, 244 (Neb. 1990); *State v. Marchand,* 410 N.W. 2d 912, 915 (Minn. App. 1987). While we recognize that the victim's reaction to the threat may be circumstantial evidence relevant to the element of intent, we conclude that even if the victim was not actually afraid a reasonable jury could have found beyond a reasonable doubt that the defendant's purpose was to terrorize.

We do not address the defendant's identification argument because it is unlikely to arise in a new trial. *See State v. Kirsch,* 139 N.H. 647, 656 (1995). The defendant's remaining argument was not preserved for appeal because it was not presented at trial. *See State v. Johnson,* 130 N.H. 578, 587 (1988).

*Reversed and remanded.*

BROCK, C.J., and BRODERICK, J., sat for oral argument but did not take part in the final vote; DALIANIS and DUGGAN, JJ., concurred.