THE STATE OF NEW HAMPSHIRE

v.

RONALD W. SILK

March 15, 1994

*Jeffrey R. Howard,* attorney general (*Joseph N. Laplante,* attorney, on the brief and orally), for the State.

*James E. Duggan,* chief appellate defender, of Concord, by brief and orally, for the defendant.

BATCHELDER, J.   The defendant, Ronald Silk, was convicted of two counts of aggravated felonious sexual assault, RSA 632-A:2, I (1986 & Supp. 1993), and one count of felonious sexual assault, RSA 632-A:3, II (1986), after a jury trial in Superior Court (*Mohl,* J.). On appeal the defendant argues that the trial court erred in admitting the testimony of the State's expert psychologist to prove the sexual assaults. Additionally, he argues that the trial court erred in denying his request for funds for an expert to counter that testimony and in permitting the State to reopen the evidence to recall the complaining witness. We reverse on the first claim of error, and because the other two claims are not likely to arise in a new trial, we do not address them.

The alleged victim, sixteen years old at the time of trial, is the step-daughter of the defendant, having lived with him and her mother since the age of two. She testified about incidents of sexual abuse in which the defendant committed cunnilingus and sexual intercourse with her.

Also testifying for the State was Dr. Kathleen Bollerud, an expert in psychology and child sexual abuse, who interviewed and evaluated the victim based on "symptom checklists" and a series of drawings she asked the victim to produce. From the information she gathered, Dr. Bollerud concluded that the victim presented a "symptom picture" consistent with sexual abuse.

In *State v. Cressey*, 137 N.H. 402, 628 A.2d 696 (1993), decided after the trial in this case took place, we held precisely this type of evidence to be inadmissible to prove sexual abuse. Conceding that admission of the expert testimony here was erroneous, the State argues that the error was harmless. The burden is on the State to prove harmless error, *State v. Reynolds*, 136 N.H. 325, 327, 615 A.2d 637, 638–39 (1992), and this burden is met only if we can conclude beyond a reasonable doubt that the evidence did not affect the verdict. *Id.* at 329, 615 A.2d at 640.

When considering similar evidence in *Cressey*, we found Dr. Bollerud's testimony "lengthy, comprehensive, and directly linked to a determination of the guilt or innocence of the defendant," *Cressey*, 137 N.H. at 411, 628 A.2d at 702, and its introduction into evidence therefore not harmless. The same may be said here.

Dr. Bollerud first gave a detailed account of the characteristic symptoms generally observed in adolescent female victims of sexual abuse. She then described her clinical interview with the victim and the specific symptoms she presented. Next, and at great length, the witness testified about the process involved in obtaining the drawings made by the victim, describing for the jury each of four drawings and their significance. According to the witness, the pictures showed "gender confusion." The absence of hands in the victim's drawing of a male indicated a desire to "disempower this person," while a similar absence in the victim's self-portrait revealed "a feeling of helplessness, or inability to protect oneself." The same figure drawn without feet indicated an "inability to escape or to get away, and an insecurity in the world." The victim's omission of her stepfather, the defendant, when asked to draw a family portrait "suggest[ed] emotional conflict about the party that's missing." Drawing the defendant at Dr. Bollerud's request, the victim omitted his mouth, "suggest[ing] anxiety about that body part," and drew him

with "empty eyes . . . suggestive of an emotional vacancy." Finally, Dr. Bollerud described the victim's symptoms of post-traumatic stress disorder, chronic depression, and homicidal and suicidal ideation as being consistent with sexual abuse to "a reasonable degree of scientific certainty."

The drawings were introduced as exhibits and highlighted by the State during closing argument. The prosecutor emphasized the significance Dr. Bollerud placed on the characteristics of the pictures, impressing on the jury that if the victim were lying about the sexual abuse, she would have "to be really sophisticated to know what she is supposed to leave out of these drawings in order to convince Dr. Bollerud that there's a problem. . . . She would have to be very sophisticated about psychology to be able to do that, to fool Dr. Bollerud." He then reminded the jury that Dr. Bollerud believed the victim's symptoms were consistent with sexual abuse.

■ The State seeks to characterize Dr. Bollerud's testimony as harmless by focusing on the detailed testimony of the victim and on the corroborating testimony of her cousin that the defendant had admitted assaulting the victim. While this other evidence is to be considered in a harmless error analysis, *see State v. Lemieux*, 136 N.H. 329, 331–32, 615 A.2d 635, 636 (1992), "[i]t is not a question whether the evidence, apart from that erroneously admitted, would support a finding of guilt, but whether it can be said beyond a reasonable doubt that the inadmissible evidence did not affect the verdict." *State v. Skidmore*, 138 N.H. 201, 203–04, 636 A.2d 64, 66 (1993) (quotation omitted).

The inadmissible evidence at issue here was not merely a single question and answer that could be viewed as "inconsequential," *Lemieux*, 136 N.H. at 332, 615 A.2d at 636. Rather, it was the entire testimony of an expert witness, complete with drawings by the victim which the witness suggested were consistent with the defendant's guilt.

■ Moreover, the prosecutor in his closing argument encouraged the jury to consider the expert's testimony in reaching a verdict. Indeed, by suggesting that Dr. Bollerud could not have been and was not fooled by the victim, the prosecutor in effect called upon the jury to trust Dr. Bollerud's assessment of the complaining witness rather than its own. Such an abdication of the jury's responsibility to decide witness credibility would be impermissible. *Reynolds*, 136 N.H. at 328–29, 615 A.2d at 639. Viewing the evidence in this case in its entirety, we cannot conclude beyond a reasonable doubt that the inad-

missible evidence did not have precisely the impact on the jury that the prosecution desired, that is, that it did not affect the decision to convict. Admission of the evidence was therefore not harmless error, and the defendant's convictions must accordingly be reversed.

*Reversed and remanded.*

All concurred.