Rockingham
No. 92-684

THE STATE OF NEW HAMPSHIRE

v.

DAVID W. KIRSCH

June 27, 1995

*Jeffrey R. Howard,* attorney general *(Janice K. Rundles,* assistant attorney general, on the brief and orally), for the State.

*Carol L. Hess,* of Concord, and *Kirk Y. Griffin,* of Boston, Massachusetts *(Ms. Hess* and *Mr. Griffin* on the brief, and *Mr. Griffin* orally), for the defendant.

BATCHELDER, J. The defendant, David W. Kirsch, appeals his convictions, after a jury trial in Superior Court (*O'Neil,* J.), of aggravated felonious sexual assault, RSA 632-A:2 (1986), and felonious sexual assault, RSA 632-A:3 (1986). He argues that the trial court erred: (1) in denying his motion to suppress evidence; (2) in admitting evidence of other sexual assaults under New Hampshire Rule of Evidence 404(b); and (3) in denying his motion for a mistrial. We reverse and remand.

The defendant was tried on thirteen indictments charging sexual assaults on three young girls between 1984 and 1987. In addition to the three victims named in the indictments, three other young women testified, pursuant to Rule 404(b), about sexual abuse committed against them by the defendant from the late 1970's to the mid-1980's. With minor variations, each young woman testified to similar activity and association with the defendant. During that time period, the defendant led pre-teen church groups at the Granite State Baptist

Church in Salem, occasionally driving the church bus that transported the children from their homes to the church. In addition to leading a group called Alpha-Teens that provided recreational activities, the defendant was one of several church staff members who monitored sleep-overs at the church. He also hosted church sleep-overs at his home in Salem and, later, at his home in Plaistow. Each of the victim/witnesses testified to having been approximately seven to ten years old when she met the defendant through her association with the church and to having become close to him through the church groups she attended. Each rode on the bus or in his van with the defendant and spent the night at the church or at his home. Some remembered sitting in the defendant's lap, and all remembered the defendant's inappropriate touching, from fondling of the breasts and vaginal area to digital penetration, fellatio, cunnilingus, and sexual intercourse.

Of the thirteen indictments on which the defendant was tried, seven were dismissed at the close of the State's case. The six remaining indictments all involved the same victim, Karen G., and were comprised of three counts each of aggravated felonious sexual assault and felonious sexual assault. The defendant was found guilty of all six charges.

Prior to trial, the defendant moved to suppress evidence seized from his Plaistow home pursuant to a search warrant. The warrant was issued in November 1990 and resulted from interviews with two victims, Michelle L. and Christine L., who were sisters. Christine, then age nineteen, and Michelle, twenty, spoke with Detective Mark Cavanaugh of the Salem Police Department and Sergeant Kathleen Jones of the Plaistow Police Department. Michelle told the police that the defendant began to sexually assault her when she was approximately eight years old and continued to assault her until she was fourteen. The assaults ranged from touching her breasts and vaginal area to sexual intercourse, which occurred at the defendant's homes in Salem and Plaistow. According to Michelle, she had been shown pornographic movies by the defendant or his wife during some of these assaults, and she and other young girls were photographed in the nude by the defendant. Michelle told the police that she was fourteen years old the last time the defendant had sexual intercourse with her and that the incident occurred in his Plaistow residence. Christine told the police of an incident at the defendant's Plaistow home, when she was ten or eleven years old, when the defendant undressed her and performed digital penetration and cunnilingus and had her perform fellatio.

On the basis of this information, Sergeant Jones applied for a warrant to search the defendant's Plaistow residence, seeking

"[p]ornographic or erotic materials to include but not limited to books, magazines, articles, photographs, slides, movies, albums, letters, diaries, sexual aids or toys or other items relating to sexual acts or sexual acts with children. Additionally, photographs of the alleged crime scene." The warrant was issued, and during the search the police seized several pornographic videotapes, "sexual aid devices," nude photographs, school photographs of various children including Michelle and Christine, an address book, and a greeting card to the defendant from Michelle. Except for a nude photograph of the defendant's wife that was later removed from evidence by the court, the only other items seized that were introduced at trial were school photos and addresses of some of the alleged victims and the greeting card.

The defendant first argues that the warrant was not supported by probable cause in that it was based on stale information. As alleged in the affidavit, the defendant's most recent criminal activity and contact with the victims occurred six years prior to the application for the warrant.

Our standard for reviewing whether probable cause has been demonstrated in a search warrant affidavit is whether, given all the facts and circumstances presented to the magistrate, the police have shown that there is a substantial likelihood that contraband or evidence of crime will be found in the place to be searched. *See State v. Decoteau,* 137 N.H. 106, 111, 623 A.2d 1338, 1341 (1993). The resolution of doubtful or marginal cases with respect to the existence of probable cause will be "largely determined by the preference to be accorded to warrants." *State v. Sands,* 123 N.H. 570, 604, 467 A.2d 202, 223 (1983). Where, as here, the passage of time between the suspected criminal activity and the application for the warrant is at issue, other circumstances, such as the nature of the activity and the items sought, must also be considered in determining whether probable cause exists. *State v. Marcotte,* 123 N.H. 245, 248, 459 A.2d 278, 280 (1983).

■ Here, the affidavit supported a finding that the defendant's sexual abuse of young girls occurred over a protracted period, approximately six years. In addition, the activity occasionally involved pornographic movies and taking photographs of the victims in the nude. There would be no reason to conclude that the defendant would have felt a necessity to dispose of such items. *See id.*

We have not, before now, been faced with a case such as this. Other courts, however, have ruled in similar circumstances that an appreciable lapse of time was no bar to a finding of probable cause to issue a search warrant, in light of the nature of the offense and of the items sought. In *State v. Woodcock,* 407 N.W.2d 603 (Iowa 1987), the court stated that "it would be reasonable for an issuing magistrate to conclude that a person charged with sexual exploitation of

children through photographs and similar items would be likely to retain them for an indefinite period." *Id.* at 605 (events alleged in affidavit predated warrant application by a year and a half). As the Iowa court explained, unlike the evidence or fruits of other crimes, such as theft or drug offenses, "the types of material involved here would be more likely to be retained. Their perceived usefulness to the suspect would be of a continuing nature, through gratification obtained by him." *Id.*

Similarly, in *People v. Russo,* 487 N.W.2d 698 (Mich. 1992), notwithstanding that the last incident alleged in the affidavit had occurred six and one-half years before, the court upheld a finding of probable cause to believe that a suspected child molester would still have pornographic articles such as videotapes and photographs at his home. Acknowledging that the passage of time is one factor to be considered in the probable cause analysis, the Michigan court articulated the test, as did this court in *State v. Marcotte,* 123 N.H. at 248, 459 A.2d at 280, as a balance of all the circumstances,

> such as whether the crime is a single instance or an ongoing pattern of protracted violations, whether the inherent nature of the scheme suggests that it is probably continuing, and the nature of the property sought, that is, whether it is likely to be promptly disposed of or retained by the person committing the offense.

*Russo,* 487 N.W.2d at 707. The affidavit in that case showed ongoing sexual abuse of children over a period of four years and the use of photographs in connection with the criminal activity. The court held it reasonable for the magistrate to conclude that the evidence was likely retained by the defendant at his residence. *Id.* at 711.

Here, the affidavit recounted sexual abuse of children over a period of six years. During that period the defendant photographed the children and displayed pornographic movies during some of the assaults. Although the affidavit did not contain a so-called "pedophile profile," reciting the types of material collected by child molesters and their proclivity for retaining it, we do not believe such a recitation is required to establish probable cause. *See id.* A "common-sense inference," *id.* at 705, about the longevity of child pornography for the sexual abuser of children may reasonably be drawn from the nature of the items themselves, such as the photographs taken of the children. "[P]hotographs guarantee that there will always be an image of the child at the age of sexual preference . . . . [Their] retention . . . may also serve to insure that the child keeps the secret, thereby permitting the offender to continue molesting children . . . ." *Id.*

For the foregoing reasons, we think it reasonable for a magistrate to conclude that all the items sought were reasonably connected to the suspected criminal activity and likely to have been retained by the defendant. We therefore uphold the magistrate's finding of probable cause.

Next the defendant challenges the search warrant on the ground that it lacked particularity in its description of the property sought. "The degree of specificity required in a search warrant depends upon the nature of the items to be seized." *State v. Emery,* 123 N.H. 630, 633, 465 A.2d 922, 924 (1983) (warrant authorizing search for nude photos, "restraining devices," and "other devices used in S & M sexual activity" sufficiently particular); *see also State v. Fitanides,* 131 N.H. 298, 301, 552 A.2d 1379, 1380 (1988) ("fireworks, smokebombs, records, ledgers, U.S. Currency, and slot machines" sufficient where "a more precise description of the goods to be seized was a practical impossibility"), *cert. denied,* 490 U.S. 1080 (1989).

■ The warrant here did not purport to authorize a general exploratory search, against which the particularity requirement is a safeguard, *State v. Tucker,* 133 N.H. 204, 206, 575 A.2d 810, 812 (1990), but was tailored towards seizure of pornographic and child-related items based on the observations of a child some years before. The "practical impossibility" of further specificity is apparent. We conclude that the warrant's description of the items to be seized was sufficiently particularized.

The defendant next argues that the trial court erred in permitting the State to introduce evidence of other bad acts committed by the defendant. Prior to trial the State moved to introduce evidence of other uncharged sexual assaults as evidence of the defendant's motive, intent, and common plan or scheme. *See* N.H. R. Ev. 404(b). According to the State's proffer to the trial court, the evidence would show that the defendant "selected and seduced each victim by always choosing as his victims young girls, who lived well below the poverty line, in dysfunctional households, without any real father figure." It would further show, according to the State, that the defendant "positioned himself," through his role in the church, as a trusted father figure who occasionally fed and clothed them and "then seduced each of the little girls in the same manner." After a hearing, the trial court ruled that the evidence was relevant to prove motive, intent, and common plan or scheme, that there was clear proof the defendant committed the acts, and that the probative value of the evidence was not substantially outweighed by prejudice to the defendant. As its expressed basis for finding the evidence relevant, the trial court stated:

The witnesses described incidents of sexual assault occurring in the basement of the church during sleep overs and during "junior church," in the defendant's van while playing "Simon Says," or while sitting in the panel seat next to the defendant who was driving, in the downstairs and upstairs bedrooms of the defendant's Plaistow home, in the hot-tub in the defendant's Plaistow home, and in the attic of the defendant's Salem home. Most of the incidents involved touching and fondling by the defendant, but many included oral sex and intercourse.

In ruling that the probative value of the evidence was not substantially outweighed by the prejudice, the court found that the victims all met the defendant through the church, that most of them had no father, came from broken homes, were poor, and that the defendant "offered emotional support to the victims and became a father figure to them," taking them out to eat and to amusement parks. "In this manner," the court explained in its order, "the State seeks to prove that the defendant gained the trust and confidence of the victims to lure them into his home and into his life."

Rule 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

"The purpose of Rule 404(b) in a criminal trial is to ensure that the defendant is tried on the merits of the crime as charged and to prevent a conviction based on evidence of other crimes or wrongs." *State v. Bassett,* 139 N.H. 493, 496, 659 A.2d 891, 894 (1995).

Evidence of other bad acts is only admissible if relevant for a purpose other than to prove the defendant's character or disposition, if there is clear proof the defendant committed the other acts, and if the prejudice to the defendant does not substantially outweigh the probative value of the evidence. *State v. Whittaker,* 138 N.H. 524, 526, 642 A.2d 936, 938 (1994). The trial court's decision to admit other bad acts evidence is reviewable for abuse of discretion, which is found only where a defendant can show that the decision was "clearly untenable or unreasonable to the prejudice of his case." *Bassett,* 139 N.H. at 496, 659 A.2d at 894 (quotation omitted). The defendant challenges the admissibility of the evidence at issue on the relevancy and prejudice prongs of the analysis.

To meet the relevancy requirement, the other bad acts evidence "must have some direct bearing on an issue actually in dispute," *State v. Blackey,* 137 N.H. 91, 95, 623 A.2d 1331, 1333 (1993), and there must be "a clear connection between the particular evidentiary purpose, as articulated to the trial court, and the [other bad acts]." *Bassett,* 139 N.H. at 496, 659 A.2d at 894. The burden is on the State to articulate to the trial judge the precise evidentiary purpose for which it seeks to introduce the other crimes evidence and the purported connection between the evidence and the stated purpose. *See id.* The State proffered, and the trial court found, three evidentiary purposes for the other bad acts evidence; namely, motive, intent, and common plan or scheme. We examine each in turn.

██ Motive is generally understood to refer to the "reason that nudges the will and prods the mind to indulge the criminal intent," *id.* at 497, 659 A.2d at 895 (quotation omitted), or what prompts a defendant to engage in a particular criminal activity. The State argued below that the evidence of the uncharged assaults would show the defendant's "motive in selecting these particular victims," and argues on appeal that the evidence showed "the motive with which the defendant acted when he involved himself in the church's pre-teen program, and subsequently in the lives of each of these girls." We think the State misperceives the issue. Motive, to the extent it is at issue at all, concerns the defendant's reason for committing the charged crime, not his motivation for engaging in ancillary activities that may have been precursors to criminal conduct. The crux of the State's argument appears to be that the other incidents show the defendant's desire for sexual activity with a certain type of victim. This, however, "is proof of propensity, not motive." *Whittaker,* 138 N.H. at 527, 642 A.2d at 938 (quotation omitted). We are not persuaded that the State demonstrated a clear connection between motive and the uncharged assaults.

The second reason advanced by the State for admitting the other acts was that they were probative of the defendant's intent. "To be relevant to intent, evidence of other bad acts must be able to support a reliable inference, not dependent on the defendant's character or propensity, that the defendant had the same intent on the occasions of the charged and uncharged acts." *Bassett,* 139 N.H. at 499, 659 A.2d at 896.

██ In the trial court, the State put forth essentially the same argument with respect to relevance to prove intent as it did to prove motive. Focusing on the number and similarity of the assaults and the defendant's mode of seduction, the State argued that "[t]hese actions on the part of the defendant show how he purposely selected and seduced his victims. As such this type of evidence bears directly on the defendant's intent . . . ."

This argument is indistinguishable from one that would seek to use the evidence to show the defendant's propensity to sexually assault young girls and therefore to imply his intent to commit the charged assaults. *See id.* at 500, 659 A.2d at 896–98. "The only connection is the putative similarity of the activity," *State v. Richardson,* 138 N.H. 162, 167, 635 A.2d 1361, 1365 (1993), and to argue that evidence of the defendant's other similar assaults tends to prove his guilt of the charged offenses is to seek to show "propensity, pure and simple; calling it relevant to prove 'state of mind' does not make it so." *Id.* at 168, 635 A.2d at 1365 (citation omitted).

With respect to the State's common plan or scheme rationale for relevance, the State argued to the trial court that the defendant's "routine used in assaulting any one of the victims is similar, if not identical, to the manner in which he assaulted other victims." The common plan exception to the Rule 404(b) prohibition requires more. "A pattern or systematic course of conduct is insufficient to establish a plan." *Whittaker,* 138 N.H. at 528, 642 A.2d at 939 (quotation omitted). Rather, to be admissible as evidence showing the defendant's plan, other bad acts must be constituent parts of some overall scheme. *Id.* "Therefore, it is not enough to show that each crime was 'planned' in the same way; rather, there must be some overall scheme of which each of the crimes is but a part." *Id.* (quotation omitted). Showing that the defendant had a pre-existing "plan" to gain the trust of young girls from deprived homes in order to seduce and sexually assault them does not demonstrate a common plan or scheme as we have thus defined it in *Whittaker.* It is merely proof of the defendant's penchant or propensity for committing the same offense repeatedly; this is "the precise purpose, under Rule 404(b), for which it may *not* be used," *id.*; *see also Blackey,* 137 N.H. at 96, 623 A.2d at 1333.

Whether nominally labeled motive, intent or common plan, the ostensible purpose for which the prosecution sought to admit evidence of a multitude of other uncharged sexual assaults was to show the defendant's predilection for molesting young females over whom he was able to gain control through engendering trust. At most, this is evidence of the defendant's disposition to commit the offenses with which he was charged, impermissible under Rule 404(b). Because it was not relevant for a permissible purpose, the evidence should have been excluded, and its introduction was an abuse of discretion.

The State has not argued that any error in the trial court's admitting the evidence at issue was harmless. Because the State has the burden to prove the harmlessness of an error beyond a reasonable

doubt, *see State v. Silk,* 138 N.H. 290, 291, 639 A.2d 243, 244 (1994), we can only interpret its failure to argue the issue in this case as an implicit concession that if we found error, it would not be harmless. We will therefore not engage in a harmless error analysis but will reverse.

Finally, the defendant argues that his motion for a mistrial should have been granted after a photograph that had been admitted into evidence was discovered not to have been in existence when the witness who identified it said that she saw it. Rather than declare a mistrial, the trial court ordered the photograph removed from evidence and instructed the jury that the photograph could not have been in existence when the witness testified she had seen it. This issue is unlikely to arise in a new trial, and we therefore need not reach it. *See Silk,* 138 N.H. at 290, 639 A.2d at 244. We note, however, that the record demonstrates that the defense itself had been in possession of information, prior to the prosecution's introduction of the photograph into evidence, establishing that the film from which the photograph was produced was not manufactured until 1990, well after contact between the defendant and the victim had ceased. Any prejudice that might have resulted from the jury's awareness of the photo was self-inflicted, and would not have justified the granting of a mistrial.

*Reversed and remanded.*

THAYER, J., with whom HORTON, J., joined, concurred in part and dissented in part; HORTON, J., concurred in part and dissented in part; the others concurred.

THAYER, J., concurring in part and dissenting in part: Although I concur in the majority's treatment of the search warrant and mistrial issues, I respectfully dissent from the majority's holding that the evidence of the defendant's other bad acts was not relevant.

Other bad act evidence may not be used for the purpose of proving a defendant's character or propensity to commit the crime charged. N.H. R. Ev. 404(b). Rule 404(b) does, however, permit the admission of such evidence for other purposes as the rule itself provides. If the evidence is relevant for a permissible purpose, the defendant is entitled to a limiting instruction to insure that the jury uses the evidence only for that limited purpose. The defendant is further entitled to have the trial court examine the evidence to determine whether its probative value is substantially outweighed by the danger of unfair prejudice. *See State v. Trainor,* 130 N.H. 371, 375, 540 A.2d 1236, 1239 (1988) (Rule 403 analysis is appropriate under Rule 404(b)).

In this case, the prior bad acts alleged by the State and recounted by the majority were offered to show the defendant's plan, and they do so. The majority's narrow reading of the common plan exception essentially

requires the State to show the defendant's state of mind before he started on his spree of criminal conduct, limiting the exception to a mutually dependent series of events. As stated in the dissent in *State v. Whittaker,* 138 N.H. 524, 531, 642 A.2d 936, 941 (1994) (Horton, J., dissenting), the rule should not be so limited. Furthermore, even under the standard set forth by the majority, the State can show, by circumstantial evidence, that the defendant's plan was to obtain a position of authority and then select his victims utilizing, as the trial court found, a common set of criteria. Unlike *Whittaker,* in which the defendant allegedly committed two otherwise unrelated sexual assaults in a somewhat similar manner over a five-year period, here there was evidence of the defendant's common scheme to use his position to sexually assault young girls. *See State v. Bennett,* 672 P.2d 772, 775 (Wash. Ct. App. 1983) (evidence that defendant offered food and shelter to other vulnerable teenagers in exchange for sex relevant under Rule 404(b) to demonstrate defendant's plan, making it more probable that sexual intercourse occurred with victims); *cf. State v. Tarsitano,* 134 N.H. 730, 736, 599 A.2d 474, 477 (1991). In my view, the evidence was clearly relevant for that purpose.

HORTON, J., joins the opinion of THAYER, J.

HORTON, J., concurring in part and dissenting in part: I join the opinion of Thayer, J., concurring in part and dissenting in part. In addition, I refer all to my dissents in *State v. Whittaker,* 138 N.H. 524, 530, 642 A.2d 936, 940 (1994), *State v. Bassett,* 139 N.H. 493, 503, 659 A.2d 891, 898 (1995), and *State v. McGlew,* 139 N.H. 505, 511, 658 A.2d 1191, 1196 (1995).