MURDOCK, Justice
(dissenting).
Like the majority of the Alabama Court of Criminal Appeals, I must conclude that the instructions given by the trial court with regard to the jury’s use of certain evidence of “prior bad acts” by R.C.W. was confusing and potentially prejudicial. I therefore would affirm the judgment of the Court of Criminal Appeals in this case. Accordingly, I respectfully dissent.
Rule 404(b), Ala. R. Evid., prohibits the admission of evidence of prior bad acts by a criminal defendant to demonstrate the defendant’s “propensity” to act in a given manner, i.e., to show “action in conformity therewith.”
“The rule regarding admissibility of prior misconduct by a criminal defendant has been well stated in C. Gamble, McElroy’s Alabama Evidence § 69.01(1) (3rd ed.1977):
“ ‘This is a general exclusionary rule which prevents the introduction of [collateral] criminal acts for the sole purpose of suggesting that the accused is more likely to be guilty of the crime in question....
“ ‘This exclusionary rule is simply an application of the character rule which forbids the state to prove the accused’s bad character by particular deeds. The basis for the rule lies in the belief that the prejudicial effect of [collateral] crimes will far outweigh any probative value that might be gained from them. Most agree that such evidence of [collateral] crimes has almost an irreversible impact upon the minds of the jurors.’ ”
Ex parte Cofer, 440 So.2d 1121, 1123 (Ala.1983). See also Rule 403, Ala. R. Evid (“Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.... ”).
If it is true that evidence of other types of prior criminal acts (e.g., burglary, theft, and drug possession) can leave an “irreversible impact upon the minds of the jurors,” how much more so is this true as to the type of acts alleged here? As this Court explained in Ex parte Billups, 86 So.3d 1079 (Ala.2010), given the graphic *122 nature of the collateral-acts evidence at issue, the risk of “ ‘confusion of the jury and the probable prejudice to [the defendant,]’ ” as a result of the erroneous instruction “ ‘is obvious,’ ” and even constitutes “plain error.” 86 So.3d at 1086 (quoting Billups v. State, 86 So.3d 1032, 1079 (Ala.Crim.App.2009) (Welch, J., dissenting)).
I can find no meaningful distinction between the present case and Ex parte Billups—and certainly not one that has been explained using a clear standard by which future cases can be judged. In both Ex parte Billups and this case, the jury was “overcharged.” In both cases, the jury was told it could consider “prior-bad-acts” evidence as to multiple purposes for which there was no “plausible” need for the evidence.
In Ex parte Billups, this Court concluded that the fact that it was not plausible for the jury to use the evidence of Billups’s prior bad acts for some of the uses as to which it was instructed rendered the trial court’s instruction prejudicial. Today, we use the same lack of “plausibility” rationale t,o conclude that the overcharging of the jury here was harmless. I cannot reconcile these two different perspectives.
It is true that, in Ex parte Billups, the jury was charged as to four purposes Bill-ups contended were not at issue (“opportunity, preparation, knowledge, [and] absence of mistake,” 86 So.3d at 1085), whereas here the jury was charged as to three impermissible uses of such eollateral-bad-act evidence (intent, plan, and opportunity). I see no distinction — and no articulated rule of decision explaining any distinction — between the risk of prejudice when the jury is instructed as to four improper uses versus three improper uses.[2]
Nor do I believe we can take comfort in the notion that jurors will be able to, and actually will, parse the different reasons for which the trial judge tells them they may consider problematic evidence and discern which purposes are appropriate for their consideration under our rules and which are not.[3] Most jurors, of course, are not lawyers. They are instructed by the judge, the authority figure in the courtroom upon whom the jurors depend for their understanding of the law and the task they are to perform, that they in fact may use this evidence for any of and all the purposes the judge lists for them. It *123 would only be natural for the jurors to attempt to “plug in” this evidence to some of or all these purposes. In this case, for example, it is not difficult to imagine one or more jurors, after hearing from the judge that they may consider the defendant’s prior acts in relation to the defendant’s “intent” and “plan,” reasoning that the defendant probably “intended” and “planned” to abuse the victims because, after all, he had committed similar acts on similar victims in the past.[4]
In short, by inviting jurors to consider the use of such collateral-acts evidence for purposes that are not at issue and that are not further explained to the jurors, the trial court invites confusion and attempts by jurors to find uses for the evidence of “prior bad acts” that correspond in the jurors’ minds in some way to the trial court’s instructions. We are warned by courts and commentators alike that, “[w]hen prior bad act evidence is offered to prove a motive for the crime, ‘courts must be on guard to prevent the motive label from being used to smuggle forbidden evidence of propensity to the jury.’ ” United States v. Varoudakis, 233 F.3d 113, 120 (1st Cir.2000) (quoting 22 Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice and Procedure § 5240 (1978)). The type of instructions we accept today makes it more likely, not less, that jurors will in effect end up considering the evidence of the defendant’s prior bad acts as evidence indicating a propensity to have acted that way again, the very thing Rule 404(b) was designed to guard against. As the current version of the above-referenced treatise also warns, experience with efforts to admit prior-bad-act evidence in sex-offense cases “suggests that in practice they often degenerate into some version of the outlawed use of other crimes evidence to show propensity to engage in [the] *124 crime.” 22A Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice and Procedure: Evidence, Other Crimes, Wrongs, or Ad® — Other Exceptions § 5248 (2012).
At the end of the day, I believe we have left ourselves and the trial courts without a rationale — and without a standard — that provides meaningful guidance going forward. Moreover, I believe we have accepted an approach that, as a practical matter, will have the effect in many cases of negating the core prohibition intended by Rule 404(b).[5]

. Likewise, there is no distinction between this case and Marks v. State, 94 So.3d 409 (Ala.Crim.App.2012), in which, as in this case, the jury was erroneously instructed that it could consider evidence of prior bad acts for three purposes that did not correspond to real and open issues:
“The State does not address the additional purposes — motive, knowledge, or modus op-erandi— on which the jury was instructed it could consider the collateral-act evidence in this case.
“Although not as broad as the instructions at issue in Ex parte Billups, [86 So.3d 1079 (Ala.2010),] the instruction in this case regarding the permissible use of the collateral-act evidence was too general and authorized the jury to consider the evidence for 'implausible purposes’.... ”
94 So.3d at 413 (emphasis added).

. Justice Shaw states in his special writing that he sees “nothing indicating that instructing the jury that it could use the collateral-acts evidence for three pwposes for which it would, ultimately, not use the evidence — i.e., it would not use the evidence to determine if R.C.W. possessed an intent, plan, and opportunity — necessarily prejudiced R.C.W.,’’ 168 So.3d at 121 (emphasis added), and that “[tjelling the jury that it could consider the evidence for something it would not consider it for anyway, on its face, does not prejudice the defendant when the evidence was otherwise properly before it for another purpose." 168 So.3d at 121 (first emphasis added).

. Because these were not real and open issues in this case, the trial court did not explain to the jurors what Rule 404(b) contemplates by the terms "intent” and "plan.” Although the omission of such instructions therefore was understandable, it left the jurors to apply their common, "everyday” understanding of these terms. The meaning of these terms within the contemplation of Rule 404(b), however, is of course different. As the majority of the Court of Criminal Appeals recognized:
"In the present case, R.C.W. was charged with crimes — first-degree rape, incest, first-degree sexual abuse, and sodomy — that do not require any specific criminal intent. The intent necessary to these types of crimes may be inferred by the jury from the acts themselves. See Anonymous [v. State, 507 So.2d 972, 975 (Ala.1987)]. Accordingly, the testimony regarding the prior sexual mistreatment of R.C.W.’s daughters was inadmissible under Rule 404(b), Ala. R. Evid., to prove intent.
“Additionally, there was no real and open issue as to the other purpose, i.e., showing a common plan, for which the jury was instructed it could consider the evidence. This Court has held that the common plan, scheme, or design exception applies only when identity is actually at issue. See Campbell v. State, 718 So.2d 123, 128-29 (Ala.Crim.App.1997) (quoting Register v. State, 640 So.2d 3 (Ala.Crim.App.1993), aff’d, 680 So.2d 225 (Ala.1994)). The Alabama Supreme Court has also held that the identity exception is coextensive with the exception for plan, scheme, or system. See Ex parte Darby, 516 So.2d 786, 789 (Ala.1987); 1 Charles W. Gamble & Robert J. Goodwin, McElroy’s Alabama Evidence § 69.01(6) (6th ed.2009) (‘Indeed, there is some judicial language that these two exceptions — plan and identity — are co-extensive in the sense of rendering plan or scheme unavailable unless identity is clearly at issue in the case.'). Here, there was nothing in the record that indicates that R.C.W.’s identity was in issue. R.C.W. never alleged that someone else was the perpetrator of the crimes. See Mothershed v. State, 596 So.2d 47, 48 (Ala.Crim.App.1991). Thus, the evidence of the collateral sexual misconduct was inadmissible to prove plan.”
R.C.W. v. State, 168 So.3d 90, 95-96 (Ala.Crim.App.2012).

. This in the context of concerns that persist among some courts and commentators, notwithstanding contrary holdings by this and other courts, that, if the defendant did the act, the intent and motive can readily be inferred from the act itself and that so-called "motive” evidence amounts to nothing more than prohibited "propensity evidence.” See, e.g., 22A Federal Practice and Procedure: Evidence § 5248 (discussed in the text, supra); State v. Wells, 289 Kan. 1219, 1229, 221 P.3d 561, 569 (2009) ("Conviction for mere propensity’ — defined by The American Heritage Dictionary of the English Language 1048 (1971), as an innate inclination, a tendency or bent— would be the almost certain result of admitting this evidence for motive.”); State v. Kirsch, 139 N.H. 647, 654, 662 A.2d 937, 942 (1995) ("The crux of the State’s argument appears to be that the other incidents show the defendant’s desire for sexual activity with a certain type of victim. This, however, 'is proof of propensity, not motive.’ ”). See generally, e.g., 1 Kenneth S. Broun, McCormick on Evidence § 190 (7th ed.2013) (explaining that "[t]he motive theory should not apply ... when 'motive' or 'intent’ is just another word for propensity” (footnotes omitted)); 22A Federal Practice and Procedure: Evidence, Other Crimes, Wrongs, or Acts — Exceptions; Motive § 5240 (2012)(earlier edition cited in the text, supra).