Strafford
No. 95-369

THE STATE OF NEW HAMPSHIRE

v.

JOHN MELCHER

May 8, 1996

*Jeffrey R. Howard*, attorney general (*Mark S. Zuckerman*, assistant attorney general, on the brief and orally), for the State.

*David M. Rothstein*, assistant appellate defender, of Concord, by brief and orally, for the defendant.

BRODERICK, J. After a jury trial, the defendant, John Melcher, was convicted of one count of aggravated felonious sexual assault. *See* RSA 632-A:2 (1986). In this appeal, the defendant argues that the Superior Court (*Mohl*, J.) erred in its instructions to the jury regarding the elements of the offense, and in admitting evidence of other bad acts in the State's case in chief under New Hampshire Rule of Evidence 404(b). We reverse and remand.

## I

At trial, the State alleged the following facts. In 1986, the victim lived with her sister, her mother, and the defendant, her mother's boyfriend. When the victim was thirteen years old and her mother was out, the defendant entered the victim's bedroom and exposed himself. He told her he was going to teach her about oral sex and told her to kiss his penis. She refused, and the defendant grabbed her by the hair and pulled her to him until she kissed his penis.

The defendant first argues on appeal that the trial court erroneously defined "fellatio" in its jury instructions. The indictment against the defendant alleges that he "knowingly engage[d] in . . . sexual penetration of another" by having "engage[d] in fellatio . . . with a female juvenile." At the close of the State's case, the defendant moved to dismiss based upon insufficient evidence of penetration. The trial court denied this motion and ultimately instructed the jury that

> [t]he State must prove that the defendant engaged in sexual penetration. For purposes of this case, sexual penetration includes the act of fellatio. I will tell you that fellatio is the oral stimulation of the penis. The act of fellatio does not require the penetration of the penis in the oral cavity and there is no requirement for ejaculation.

The defendant challenges this instruction.

"Sexual penetration is a material element of any aggravated felonious sexual assault offense under RSA 632-A:2." *State v. Chamberlain*, 137 N.H. 414, 416, 628 A.2d 704, 705 (1993). The legislature has defined "sexual penetration" as, among other things, "Sexual intercourse; or . . . Cunnilingus; or . . . Fellatio; or . . . Anal intercourse . . . ." RSA 632-A:1, V (1986). "Fellatio" is not defined in the statute. In the defendant's view, because "fellatio" is a subset of "sexual penetration," any definition of fellatio must include "penetration," which the defendant defines as "passing through or into." We disagree.

At the outset, we reject the defendant's assertion that our decision in *State v. St. John*, 120 N.H. 61, 410 A.2d 1126 (1980), should control. In *St. John*, the defendant alleged that the State failed to present sufficient evidence at trial to prove beyond a reasonable doubt penetration in the form of fellatio. *See id.* at 63, 410 A.2d at 1127. On appeal, the parties agreed that proof of penetration was required, and we reviewed only the sufficiency of the evidence offered to prove penetration. *Id.* at 64, 410 A.2d at 1127. Whether fellatio requires actual penetration as a matter of law thus was not before the court; consequently, our ruling in *St. John* is not dispositive.

"[T]his court is the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole." *State v. Arris*, 139 N.H. 469, 471, 656 A.2d 828, 829 (1995) (quotation omitted). RSA 625:3 (1986) requires that we construe provisions of

the Criminal Code "according to the fair import of their terms and to promote justice."

Though the legislature has not defined "fellatio," it has supplied the definitions of "sexual penetration" to be used in construing RSA 632-A:2, *see* RSA 632-A:1, V, and "fellatio" is one of these definitions. "It is a basic precept of statutory construction that the definition of a term in a statute controls its meaning." *Appeal of Rehab. Assoc's of N.E.*, 131 N.H. 560, 565, 556 A.2d 1183, 1186 (1989). Whatever its commonly accepted meaning, then, fellatio is "sexual penetration" for purposes of the statute, whether or not it involves actual penetration in the sense of "passing through or into." Because this statutory language is clear and unambiguous, "its meaning is not subject to modification by judicial construction." *State v. Dushame*, 136 N.H. 309, 314, 616 A.2d 469, 472 (1992) (quotation omitted).

■ A trial court's instructions serve "to state and explain to the jury, in clear and intelligible language, the rules of law applicable to the case." *State v. Cegelis*, 138 N.H. 249, 252, 638 A.2d 783, 785 (1994). In this case, the trial court instructed the jury that fellatio is "oral stimulation of the penis," and that "[t]he act of fellatio does not require the penetration of the penis in[to] the oral cavity." This definition accords with the common understanding of fellatio as "the practice of obtaining sexual satisfaction by oral stimulation of the penis." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 836 (unabridged ed. 1961). The trial court's instruction explained to the jury in clear and intelligible language the law applicable to the case. There was no error.

## III

The defendant next argues that the trial court improperly admitted evidence of prior bad acts under New Hampshire Rule of Evidence 404(b). Before trial, the defendant sought to prevent the introduction of evidence that within three or four years of the charged offense, the defendant had "tickled" and fondled the victim; that the defendant later, and on several occasions, had fondled the victim's breasts and genitals while she was shaving her legs; and that the defendant once had the victim sit naked on a couch between him and her mother so that she would "feel better about [her] body." The State did not seek indictments in connection with these allegations. *See* RSA 632-A:3, III (1986) (prohibiting sexual contact with person under thirteen years old). The trial court agreed with the State that these prior bad acts demonstrated a plan by the defendant to condition the victim through an escalating series of

assaults, and that the evidence was also relevant to show the relationship between the victim and the defendant.

This court recognizes that sexual assault is an emotionally and physically damaging crime, uniquely so when the victim is a minor. The allegations of prior sexual assault in this case involved unseemly and revolting acts. Nonetheless, we must determine whether these incidents are admissible under our rules of evidence without eviscerating the prohibition against the admission of evidence to demonstrate character or propensity. This task is not always clear or easy, particularly when prior acts concern sexual assault on a minor.

We begin with Rule 404(b), which provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

In a criminal trial, this rule serves "to ensure that the defendant is tried on the merits of the crime as charged and to prevent a conviction based on evidence of other crimes or wrongs." *State v. Bassett*, 139 N.H. 493, 496, 659 A.2d 891, 894 (1995). The rule reflects "long-established notions of fair play and due process, which forbid judging a person on the basis of innuendos arising from conduct which is irrelevant to the charges for which he or she is presently standing trial." *United States v. Cortijo-Diaz*, 875 F.2d 13, 15 (1st Cir. 1989).

Given the emotionally charged nature of the crime, there exists a natural temptation to regard Rule 404(b) differently when a defendant has been indicted for sexual assault. To be sure, a person who has suffered a sexual assault is a victim and deserves both the community's sympathy and its support. *See* Mosteller, *Popular Justice*, 109 HARV. L. REV. 487, 489 & n.10 (1995) (book review). But the fairness and due process concerns underlying Rule 404(b) are no less pertinent in sexual assault cases: as in any case in which a person is the object of a criminal act, neither the victim nor the community has a special claim with regard to a particular defendant until that defendant is determined by a jury, after a fair trial, to be the perpetrator of the act charged. *See id.*

With these principles in mind, we turn to the evidence of prior misconduct at issue in this case. Evidence of other bad acts is only admissible "if relevant for a purpose other than to prove the

defendant's character or disposition, if there is clear proof the defendant committed the other acts, and if the prejudice to the defendant does not substantially outweigh the probative value of the evidence." *State v. Kirsch*, 139 N.H. 647, 653, 662 A.2d 937, 942 (1995). We will not disturb the trial court's decision to admit such evidence absent an abuse of discretion. *Id.*

■■ The defendant initially challenges the admission of the other bad acts on relevancy grounds. The State bears the burden in criminal matters of demonstrating the relevance of other bad acts. *See State v. McGlew*, 139 N.H. 505, 509, 658 A.2d 1191, 1195 (1995). To be relevant, the evidence must "tend to prove or disprove an issue actually in dispute, without relying upon forbidden inferences of predisposition, character, or propensity." *Id.* at 510, 658 A.2d at 1195. In other words, no link in the chain of inferences justifying relevance can be derived from the prior conduct's tendency to show character or disposition. *See Bassett*, 139 N.H. at 499, 659 A.2d at 896; *United States v. Rubio-Estrada*, 857 F.2d 845, 853 (1st Cir. 1988) (Torruella, J., dissenting). A less stringent inquiry would undermine the "fairness of trial to which every [person] is entitled." *State v. Lapage*, 57 N.H. 245, 289 (1876).

## A

■■ As noted above, the State first argues that the other acts evidence was relevant to show a plan of ever-increasing sexual assault on the victim. The distinguishing characteristic of a plan "is the existence of a true plan in the defendant's mind which includes the charged and uncharged crimes as stages in the plan's execution." *State v. Whittaker*, 138 N.H. 524, 528, 642 A.2d 936, 939 (1994) (quotation omitted). Viewed objectively, the other bad acts must clearly tend to show that the defendant had "a definite prior design or system which included the doing of the act charged as a part of its consummation." 2 J. WIGMORE, EVIDENCE § 304, at 249 (Chadbourne rev. 1979). That a sequence of acts resembles a design when examined in retrospect is not enough; the prior conduct must be intertwined with what follows, such that the prior conduct and the charged act are mutually dependent. *See Whittaker*, 138 N.H. at 528, 642 A.2d at 939.

■ Application of this standard is no different when prior bad acts and the charged offense involve sexual misconduct. *Compare Kirsch*, 139 N.H. at 655, 662 A.2d at 943 (prior sexual misconduct) *with State v. Koehler*, 140 N.H. 469, 472, 669 A.2d 788, 790 (1995) (prior fraudulent act). There are many instances in which isolated,

discrete sexual assaults may have occurred on the same victim without the defendant's having a plan in mind, though this prior conduct most probably would establish bad character or disposition. For prior sexual misconduct to be relevant to show that the defendant had a plan, the mutual dependence between the prior conduct and the charged act still must be divorced from any actual or implicit reliance on the defendant's character. Otherwise, the existence of a plan could be claimed indiscriminately in many cases of sexual assault and serve, inappropriately, as a ready avenue to the admission of evidence that Rule 404(b) was expressly designed to exclude.

■ In this case, the State argues that the defendant's tickling and fondling the victim a few years before the charged act establish that he then had in mind a definite design to fondle the victim while she shaved her legs, and ultimately to force himself upon her. These disparate acts, however, do not tend to show that the defendant had a plan, because the purported goal of the plan — the act with which the defendant was charged — clearly did not hinge on their occurrence. The acts were not mutually dependent. Though the defendant's prior conduct does show that he seized opportunities to abuse the victim as they arose, repeated sexual assault over time does not, in and of itself, demonstrate that the defendant had a plan. Absent evidence that the charged and uncharged acts were mutually dependent, we cannot say that the defendant had in mind an overarching scheme of which each of the prior acts was but a part. *See Whittaker*, 138 N.H. at 528, 642 A.2d at 939.

## B

■ The State also contends that the other bad acts evidence is relevant here to show the context in which the crime occurred by demonstrating the relationship between the defendant and the victim. Rule 404(b) does not specifically provide for the admissibility of other acts evidence to prove "context," but it does allow such evidence to be admitted "for any purpose other than to prove the character of a person in order to show that the person acted in conformity therewith." *State v. Blackey*, 137 N.H. 91, 95-96, 623 A.2d 1331, 1334 (1993) (quotation omitted). We have indicated that context may be among these other purposes. *See State v. Johnson*, 130 N.H. 578, 584, 547 A.2d 213, 216 (1988). To be relevant, this evidence must still have some direct bearing on an issue actually in dispute, apart from its tendency to show propensity. *See Bassett*, 139 N.H. at 496, 659 A.2d at 894.

The State suggests that the victim's testimony could not be evaluated absent an understanding of her relationship with the

defendant as evidenced by the other bad acts. The trial court accepted this rationale for admitting the evidence, reasoning that the relationship was relevant "with respect to an understanding of how this kind of act occurs between a minor child and an adult," and that "to present the act without any understanding of the relationship between the parties" would be "misleading in the extreme." The court then concluded that the evidence was admissible because the fact of the relationship ultimately made it "unlikely that the act would occur out of the blue."

Context, in this instance, is "merely a synonym for propensity." *Infra* p. 832 (Horton, J., dissenting). The "relationship between the parties" is nothing more than the history of the defendant's prior sexual contact with the victim. To infer from this contact, as the trial court did, an understanding of how the charged act could have occurred, we must necessarily assume that the defendant acted on the occasion of the charged act in conformity with his prior conduct; this "assumption is the inescapable link between the charged and uncharged crimes." *State v. Hastings*, 137 N.H. 601, 605, 631 A.2d 526, 529 (1993) (quotation omitted). When, in this manner, an assumption based upon the defendant's propensity toward certain action is the essential connection in the inferential chain supporting relevance, the evidence is inadmissible under Rule 404(b). *See Bassett*, 139 N.H. at 499, 659 A.2d at 896.

Of course, a decision to admit otherwise inadmissible bad acts in the State's case in chief could not, in any event, be justified by a belief in advance of trial that excluding this evidence will mislead the jury. The jury potentially could be misled if a court prohibited the introduction of responsive evidence after the defendant "opens the door." *See State v. Taylor*, 139 N.H. 96, 99-100, 649 A.2d 375, 376-77 (1994). For example, if during trial defense counsel attempted to impeach a victim by "painting an incomplete picture of unwarranted bias," the State should not be precluded from presenting rebuttal evidence on redirect "to complete th[e] picture with appropriate detail." *State v. Recor*, 549 A.2d 1382, 1386 (Vt. 1988). Unless the defendant opens the door or other bad acts evidence is admissible for another permissible purpose, however, the fundamental demands of justice and fairness compel its exclusion. *See Lovely v. United States*, 169 F.2d 386, 389 (4th Cir. 1948).

## IV

This Court is not bereft of compassion for the victims of sexual assault, and we are not without understanding of the often unpleasant aspects of the world in which we all live. Sexual assault is a

reprehensible crime, and its perpetrators are quite properly held in public disdain. But it is precisely because evidence of past sexual misconduct is so repugnant that its unbridled admission into evidence would in most cases render impartial jury deliberations all but impossible, as this evidence "diverts the attention of the jury from the question of the defendant's responsibility for the crime charged to the improper issue of his bad character." *United States v. James*, 555 F.2d 992, 1000 (D.C. Cir. 1977) (quotation omitted).

Unlike the era of the Star Chamber, when defendants could be found guilty merely because their character was suspect, our modern criminal justice system is not inquisitional. We presume a person innocent until the State proves guilt beyond a reasonable doubt. *See State v. Tarantino*, 140 N.H. 523, 525, 668 A.2d 45, 47 (1995). A necessary corollary to the presumption of innocence "is that a defendant must be tried for what he did, not for who he is." *United States v. Myers*, 550 F.2d 1036, 1044 (5th Cir. 1977). These rules are the hallmark of a system that is rightly concerned not with obtaining particular results, but with obtaining justice.

*Reversed and remanded.*

HORTON, J., with whom THAYER, J., joined, dissented; the others concurred.

HORTON, J., dissenting: The reversal of the trial court's discretionary ruling admitting the prior bad acts evidence, in my opinion, perpetuates two errors of this court. The perpetuated errors involve the *Bassett/McGlew* limitation on relevancy, when the logical chain includes an inference that may be based on character or propensity, and the *Whittaker* plan limitation, which says that any prior bad acts admitted to prove a plan must be integral to that plan. *See State v. Bassett*, 139 N.H. 493, 503-04, 659 A.2d 891, 898-99 (1995) (Horton, J., dissenting); *State v. McGlew*, 139 N.H. 505, 511-12, 658 A.2d 1191, 1196-97 (1995) (Horton, J., dissenting); *State v. Whittaker*, 138 N.H. 524, 530-32, 642 A.2d 936, 940-41 (1994) (Horton, J., dissenting).

The evidence in this case was admitted to prove that the defendant had a plan or scheme to condition the victim to accept the defendant's sexual advances and to demonstrate the context of the relationship between the victim and the defendant. The trial court twice gave carefully structured limiting instructions to eliminate the jury's consideration of this evidence to show the defendant's bad character or his propensity to commit the charged crime. The majority rejects admission on the first ground despite these instructions, saying that the prior bad acts must be directly intertwined with the charged crime so as to have been one continuing plan in the

mind of the defendant and that their intertwining must be sufficient to support an inference that such a plan existed in the mind of the defendant. The majority would require that any inferential path must be free of character and propensity. The trial court treated the offer as a *Whittaker* plan. The State proposed to prove that the defendant held an ongoing scheme to condition the victim to accept his sexual advances. If this offered evidence has any tendency to make the existence of this scheme more probable than it would be without this evidence, it is relevant. *See* N.H. R. Ev. 401. If the prior bad acts are so remote in time or logical connection from the charged crime that they would not make the scheme more probable, then they are not relevant. This is the test for the first prong of the New Hampshire Rule of Evidence 404(b) analysis set forth in *State v. Kirsch*, 139 N.H. 647, 653-54, 662 A.2d 937, 942 (1995). Although I reject the perpetuation of the *Whittaker* limitation, I would hold that the offered evidence was relevant to the proof of a *Whittaker* plan, and that there was sufficient nexus to include the prior bad acts in the plan resulting in the charged crime. Even though I reject the *Bassett/McGlew* landmines in the inferential path, I would hold that the inferential path could be traveled without reference to character or propensity. If, in fact, a *Whittaker* plan is proven to the satisfaction of the jury, character and propensity are not needed elements. The defendant had the criminal result in mind from the first bad act.

The majority rejects admission based on the second ground, context, saying that the evidence fails to have direct bearing on the issue in dispute, apart from its tendency to show propensity. The majority rejects the trial court's finding that understanding the context and relationship between the defendant and the victim was a fair and proper proof target for the jury in its pursuit of the ultimate fact, guilt or innocence. I would find relevance and sustain this exercise of the trial court's discretion.

Context is a difficult and dangerous permitted proof target under Rule 404(b). In many cases it is merely a synonym for propensity, and therefore proscribed. This would be true where the sole context picture relates to the defendant and his likelihood to act in conformity with the acts in the context picture. In other cases the context picture explains the crime in a more general sense. This is true where a relationship is involved and where the reaction of the victim is part of the context picture. This makes context a permitted proof target. It is related to, and part of the history of, the crime. *See Burke v. State*, 624 P.2d 1240, 1250 (Alaska 1980); *Covington v. State*, 703 P.2d 436, 441 (Alaska Ct. App. 1985). Context is an

appropriate proof target in the case at hand. The understanding of the relationship between the defendant and the victim does much to explain the crime and proof of the facts of this relationship was properly before the jury. The court's instructions forbade the jury from using such proof to find propensity. The logical path to context can be trod, in this case, without reference to propensity.

Because I believe that evidence of the defendant's prior conduct with the victim was properly admitted, I respectfully dissent.

THAYER, J., joins in the dissent.