NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Rockingham

Case No. 2023-0532

Citation: State v. Moses, 2025 N.H. 36

THE STATE OF NEW HAMPSHIRE

v.

GEORGE MOSES

Argued: March 4, 2025
Opinion Issued: August 14, 2025

John M. Formella, attorney general, and Anthony J. Galdieri, solicitor general (Sam M. Gonyea, assistant attorney general, on the brief and orally), for the State.

Pamela E. Phelan, senior assistant appellate defender, of Concord, on the brief and orally, for the defendant.

DONOVAN, J.

[¶1] The defendant, George Moses, appeals his convictions, following a jury trial in Superior Court (Schulman, J.), on three counts of second degree assault – domestic violence, RSA 631:2, I(f) (2016), two counts of kidnapping – domestic violence, RSA 633:1, I (2016), three counts of criminal threatening,

RSA 631:4, I(d) (2016), and two counts of simple assault – domestic violence, RSA 631:2-b, I(a) (2016). On appeal, the defendant argues that the trial court erred in allowing the State to introduce evidence that: (1) the defendant assaulted the complainant several weeks prior to the charged incident; (2) the complainant obtained a restraining order against the defendant after the charged incident; and (3) the defendant called the complainant months after the charged incident in violation of the restraining order. We agree and conclude that the trial court's rulings were not harmless beyond a reasonable doubt. Accordingly, we reverse and remand.

I.      Facts

[¶2] The jury could have found, or the record otherwise supports, the following facts. The defendant and the complainant met through a friend and began dating shortly thereafter. At that time, the complainant's father provided her with financial assistance by paying many of her bills. Eventually, the defendant moved into the complainant's apartment. Two months later, they married in a "curbside wedding" due to COVID-19. After they married, the complainant's father stopped providing financial assistance to the complainant. The complainant expected that she and the defendant would equally divide their expenses, but they frequently could not meet their expenses. As a result, they regularly argued about their finances.

[¶3] In July 2020, during an argument about their finances, the defendant broke the complainant's cell phone by throwing it against a wall. In response, the complainant hit the defendant's drone with a mallet. The defendant then punched the complainant in the face and left the apartment. The complainant did not report this incident at that time.

[¶4] In August 2020, the defendant and the complainant organized a cookout. Following the cookout, they began to argue about their finances again. During this argument, the complainant told the defendant that she was going to get a restraining order against him. The defendant responded, "no, you're effing not." He then mocked the complainant by crumpling up and throwing a piece of paper at her, telling her that a restraining order would mean nothing and that "nobody going's to f**k with my freedom." He also threatened to kill her. The complainant then retreated to the bedroom and asked the defendant to leave her alone. Minutes later, the defendant entered the bedroom, got on top of the complainant, swore at her, and choked her. The defendant eventually loosened his grip, before he covered her mouth and began choking her again, and telling her that he "should break [her] f**cking neck." Again, the defendant loosened his grip before choking the complainant for a third time. During this incident, the defendant punched her at least once. He then stopped, got up, and stood in the doorway. When the complainant attempted to get around the defendant, he picked her up, slammed her to the floor, and began to wrestle with her until the complainant managed to escape

2

and run away.  The complainant ran to a train station where the police met her, and an ambulance took her to the hospital.

[¶5] The next day, August 6, the complainant obtained a restraining order prohibiting the defendant from having any contact with her.  On October 17, 2020, while he was incarcerated, and in violation of the restraining order, the defendant placed a collect phone call to the complainant, which she did not accept.

[¶6] As a result of the August 2020 conduct, the defendant was charged with the previously identified offenses.  Prior to trial, the State filed two motions in limine under New Hampshire Rule of Evidence 404(b) seeking to introduce: (1) the July 2020 incident; (2) the fact that the complainant obtained a restraining order against the defendant on August 6; and (3) the October 2020 phone call made in violation of the restraining order.  The defendant objected to both motions, and the court held a motions hearing.

[¶7] At the hearing, the State argued that evidence of the July 2020 incident was logically connected to the charged incident because it tended to lend credibility to the complainant's belief that the defendant posed a threat to her during the charged incident by demonstrating that the defendant previously abused her.  The defendant argued that the State was attempting to add "a little fuel to the [fire]" by "piggyback[ing]" the charged crimes onto the prior, uncharged assault.  The trial court issued an order on April 27, 2023, ruling that the July 2020 incident was admissible, reasoning that the "course of conduct between the two spouses is highly relevant to the determination of [the purpose to terrorize] element of the criminal threatening charges."  The court also found that the "risk of unfair prejudice is heavily outweighed by the probative value of the evidence."

[¶8] Regarding the State's motion to admit the restraining order and the phone call made in violation of that order, the defendant argued that the only relevance of the restraining order was to establish a bad act, and it thus constituted inadmissible propensity evidence.  The State argued that the phone call itself was relevant to prove that the defendant had the intent to terrorize the complainant.  In a margin order, the trial court ruled that "[t]he fact that the [complainant] took out a no-contact restraining order may be admitted." The court reasoned that the fact that the defendant called the complainant in violation of that order was admissible because the defendant's efforts to contact the complainant were relevant and probative of the context of the defendant's relationship with the complainant.

[¶9] The defendant stood trial for three days during which the complainant, her neighbor, police officers, and medical personnel testified.  The jury acquitted the defendant on one count of simple assault and convicted him on all remaining counts.  This appeal followed.

## II.    Analysis

[¶10] On appeal, the defendant challenges the trial court's rulings that evidence of the July 2020 incident and the October 2020 phone call were admissible under Rule 404(b).  The defendant also argues that the trial court erred by ruling that evidence that the complainant obtained a restraining order was relevant to the complainant's credibility and provided context to her relationship with the defendant.  We review the trial court's evidentiary rulings for an unsustainable exercise of discretion and will reverse only if they were clearly untenable or unreasonable to the prejudice of the defendant's case.  See State v. Nightingale, 160 N.H. 569, 573 (2010).  Because the trial court ruled upon the admissibility of the challenged evidence before trial, "we consider only what was presented at the pretrial hearing."  Id. (quotation omitted).  We so limit our review to avoid the pitfall of justifying the court's pretrial ruling by relying upon the defendant's response to the evidence at trial.  Id.

[¶11] The purpose of Rule 404(b) "is to ensure that an accused is tried on the merits of the crime charged and to prevent a conviction that is based upon propensity and character inferences drawn from evidence of other crimes or wrongs."  State v. Tufano, 175 N.H. 662, 665 (2023) (quotation omitted).  Rule 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

N.H. R. Ev. 404(b)(1).  Evidence of other crimes, wrongs, or acts is admissible only if: (1) "it is relevant for a purpose other than proving the person's character or disposition"; (2) "there is clear proof, meaning that there is sufficient evidence to support a finding by the fact-finder that the other crimes, wrongs or acts occurred and that the person committed them"; and (3) "the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice."  N.H. R. Ev. 404(b)(2).  The State bears the burden of demonstrating the admissibility of bad acts.  See Tufano, 175 N.H. at 665.  We address the trial court's rulings regarding the July 2020 incident, the restraining order, and the October 2020 phone call in turn.

[¶12] With respect to the July 2020 incident, we construe the defendant's argument to challenge the ruling pursuant to the first and third prongs set forth in Rule 404(b).  However, we need not address the first prong of the analysis because we conclude, pursuant to the third prong, that the probative value of the evidence was substantially outweighed by the danger of unfair prejudice to the defendant.  See State v. Belonga, 163 N.H. 343, 360 (2012).  Therefore, the evidence should have been excluded.

4

[¶13]  Evidence is unfairly prejudicial if its primary purpose or effect is to appeal to a jury's sympathies, arouse its sense of horror, provoke its instinct to punish, or trigger other mainsprings of human action that may cause a jury to base its decision upon something other than the established propositions in the case.  Id.  Evidence of other similar crimes or wrongs is inherently prejudicial because, notwithstanding its potential relevance, there is a risk that the jury will find that the defendant had a propensity to commit the charged crime merely because the defendant committed a similar crime or wrong in the past.  See id.; see also N.H. R. Ev. 402.  Such a risk runs counter to the principle that a defendant may be convicted only "if the jury finds that the accused committed the specific act that is the subject of the trial, and not some similar act at some other time."  Belonga, 163 N.H. at 360 (quotation omitted).  The risk of unfair prejudice increases as the degree of similarity between the prior act and the charged crime increases.  Id.

[¶14] Here, the prior act is similar to the charged crime.  Both instances began with an argument between the complainant and the defendant.  The State sought to admit evidence that an argument between the complainant and the defendant in July 2020 escalated into a physical altercation in which the defendant punched the complainant in the face.  The State further noted that the charged incident also involved the defendant punching the complainant, and then escalated to him choking her multiple times.  Given the similarity between the two incidents, the jury could have improperly concluded that the defendant inflicted violent, physical force against the complainant during the charged act because he inflicted violent, physical force against her several weeks prior.  See id. ("there was a high likelihood that the jury would conclude that the defendant struck her daughter in the charged incident merely because she had struck her daughter on a previous occasion").  The danger of unfair prejudice, therefore, was significant.

[¶15] The probative value of the evidence, however, was comparatively minor.  The trial court reasoned that the July 2020 incident was relevant to prove that the defendant had a purpose to terrorize the complainant during the charged incident.  However, as the defendant argues, the State asserted in its motion in limine that during the charged incident, the defendant threatened the victim multiple times, including a threat to break her neck and to kill her.  We conclude that it was unnecessary to admit additional evidence of a prior assault to show that the defendant had a purpose to terrorize when the defendant threatened to kill the complainant while he was choking her.[1]  See

---

[1] This separate evidence also indicates why two cases cited by the State are inapposite.  The State cites State v. Brewster, 147 N.H. 645 (2002), and State v. Richardson, 138 N.H. 162 (1993).  In both cases, we concluded that the risk of unfair prejudice did not substantially outweigh the probative value of the prior bad act evidence because the prior bad acts were relevant to intent, an issue put in serious dispute by the defendants' arguments that they lacked the necessary intent.  Brewster, 147 N.H. at 650; Richardson, 138 N.H. at 166-67.  Here, although intent was not conceded, intent was not in serious dispute such that additional evidence was required because

State v. Thomas, 168 N.H. 589, 602-03 (2016) (when balancing the prejudice and probative value of the evidence, one factor we consider is the extent to which the issue upon which the evidence is offered is established by other evidence). Here, the charges that the defendant threatened the complainant, if credited by the jury, clearly established his intent to terrorize her. Accordingly, the probative value of the evidence of the July 2020 incident was substantially outweighed by the danger of unfair prejudice, and thus, the trial court unsustainably exercised its discretion by admitting this evidence under Rule 404(b).

[¶16] We next address the trial court's admission of evidence that the complainant obtained a restraining order against the defendant on August 6, and that the defendant placed a phone call to the complainant in violation of that order in October 2020. The trial court ruled that this evidence was admissible because it was relevant to the complainant's credibility, provided context to the nature of her relationship with the defendant and, as the trial court framed the issue, told "the whole story." The defendant challenges the trial court's rulings as to both the restraining order and the subsequent October 2020 phone call.

[¶17] The defendant argues that the trial court's ruling was erroneous because "[u]ntil and unless [the complainant's] credibility was impeached and the State clearly demonstrated that the restraining order and call evidence, if believed, would rebut . . . that impeachment, there was no basis to find the evidence relevant and admissible for a non-propensity purpose" as required to admit evidence of prior bad acts under Rule 404(b). The State argues that the trial court sustainably exercised its discretion because the evidence "tended to make the victim's characterization of her relationship with the defendant more likely," which established a non-propensity purpose. We agree with the defendant and conclude that evidence that the complainant obtained a restraining order and that the defendant violated that order by making the October 2020 phone call was inadmissible.

[¶18] As we previously explained, the third prong of the Rule 404(b) analysis requires that the probative value of the evidence not be substantially outweighed by the danger of unfair prejudice to the defendant. State v. Roy, 167 N.H. 276, 288 (2015). This is the same test we apply when determining whether evidence is admissible under New Hampshire Rule of Evidence 403. Id.

[¶19] Here, the trial court admitted evidence that the complainant obtained a restraining order as relevant to bolster her credibility. Despite the relevance of this evidence to the complainant's credibility, its probative value

---

the defendant did not place his intent squarely at issue. See Brewster, 147 N.H. at 650; Richardson, 138 N.H. at 166-67.

6

was substantially outweighed by the unfair prejudice that its admission caused to the defendant's case. The admission of this evidence allowed the jury to improperly conclude that another court had previously credited the complainant's version of events and had found that a restraining order was necessary in order to protect her from the defendant. Cf. State v. Yates, 152 N.H. 245, 251 (2005) (concluding that testimony characterizing an event as a crime were "highly and unfairly prejudicial"). Because it appears that the order was obtained under a different (and lower) burden of proof than the State's burden of proof at trial, admitting such evidence further exacerbated the prejudice to the defendant's case. Compare State v. Walsh, 139 N.H. 435, 437 (1995) ("The State must prove beyond a reasonable doubt all the elements of the crime charged." (emphasis added)), with RSA 173-B:5, I (2022) ("Upon a showing of abuse of the plaintiff by a preponderance of the evidence, the court shall grant such relief as is necessary to bring about a cessation of abuse." (emphasis added)).

[¶20] In addition, evidence that the complainant obtained a restraining order against the defendant, and that he later violated it, relied upon improper propensity inferences. In order to introduce subsequent bad acts pursuant to Rule 404(b), the State must meet its burden of demonstrating the relevance of the evidence. See State v. Russell, 159 N.H. 475, 483 (2009); N.H. R. Ev. 404(b). To establish the relevance of such evidence, the State must articulate the precise chain of reasoning by which the offered evidence will tend to prove or disprove an issue actually in dispute, without relying upon forbidden inferences of predisposition, character, or propensity. Russell, 159 N.H. at 483. That chain of reasoning must demonstrate a sufficient logical connection between the acts and the permissible purpose for which the State offers the evidence. Id. For subsequent bad act evidence to satisfy the relevance prong of our three-pronged test, the act must be fairly close in time and in some significant way connected to material events constituting the crimes charged. Id.

[¶21] The trial court concluded that evidence of the restraining order was relevant because it provided context to the complainant's relationship with the defendant. Adopting the trial court's reasoning assumes that the defendant's conduct required judicial intervention to protect the complainant. The trial court explained in its order that the "fact that the victim took out a no-contact restraining order may be admitted" because "[his] efforts at contacting her are relevant, and [probative]." The relevance of this act to the charged crime, however, is premised on the assumption that the defendant was willing to break the law whenever it interfered with his relationship with the complainant. The admission of this evidence relies upon propensity inferences. Accordingly, evidence that the complainant obtained a restraining order and that the defendant violated that order by making the October 2020 phone call was inadmissible.

7

[¶22] Relatedly, the trial court ruled that the phone call placed in October 2020 in violation of the restraining order was admissible, in part, to tell "the whole story." In effect, telling the whole story of the parties' relationship is synonymous with context. See State v. Melcher, 140 N.H. 823, 829-30 (1996) (identifying relationship between the parties as context). Although Rule 404(b) does not specify that "other acts evidence" is admissible to prove context, it allows such evidence to be admitted "for any purpose other than to prove the character of a person in order to show that the person acted in conformity therewith." Id. at 829 (quotation omitted). Context may be among those purposes. Id. "To be relevant, this evidence must still have some direct bearing on an issue actually in dispute, apart from its tendency to show propensity." Id.

[¶23] Context, in this instance, however, is "merely a synonym for propensity." Id. at 830 (quotation omitted). Finding that telling the whole story — that the complainant obtained a restraining order and, months after the charged conduct, the defendant violated that order by making an unanswered phone call — is relevant requires assuming that the defendant had the tendency to do "bad things" when it came to his relationship with the complainant. Because Rule 404(b) does not permit any link in the chain of inferences supporting the relevance of this evidence to be derived from the conduct's tendency to show character or disposition, we conclude that the evidence of the phone call placed in violation of the restraining order was inadmissible. See Tufano, 175 N.H. at 667 (quotation omitted). Therefore, the trial court unsustainably exercised its discretion by admitting this evidence.

[¶24] The State nevertheless argues that, if the trial court's evidentiary rulings were erroneous, any error was harmless. To establish harmless error, the State must prove beyond a reasonable doubt that the error did not affect the verdicts. State v. Boudreau, 176 N.H. 1, 11 (2023). This standard applies to both the erroneous admission and exclusion of evidence. Id. Unlike our review of a trial court's pretrial, evidentiary rulings, our harmless error analysis requires that we consider the other evidence presented at trial as well as the character of the erroneously admitted evidence itself. See id. To determine whether the State has proven beyond a reasonable doubt that an error did not affect the verdict, we must evaluate the totality of the circumstances at trial. Id.

[¶25] The factors that we have considered in assessing whether an error is harmless beyond a reasonable doubt include, but are not limited to: (1) the strength of the State's case; (2) whether the admitted or excluded evidence is cumulative or inconsequential to the State's case; (3) the frequency of the error; (4) the presence or absence of evidence corroborating or contradicting the erroneously admitted or excluded evidence; (5) the nature of the defense; (6) the circumstances in which the evidence was introduced at trial; (7) whether the court took any curative steps; (8) whether the evidence is of an

inflammatory nature; and (9) whether the other evidence of the defendant's guilt is of an overwhelming nature. Id. at 12. No one factor is dispositive. Id. This court may consider factors not listed above, and not all factors may be implicated in a given case. Id.

[¶26] We conclude that the trial court's errors in this case were not harmless. We have recognized that "unfair prejudice is inherent in evidence of other similar crimes or prior convictions." State v. Bassett, 139 N.H. 493, 502 (1995). The trial court committed three distinct errors here by admitting evidence of the July 2020 incident, the restraining order, and the October 2020 phone call made in violation of a restraining order. Admitting evidence of the restraining order and the defendant's violation of it compounded the court's initial error in admitting the July 2020 incident. As we previously observed, the evidence of the July 2020 incident was substantially similar to the charged offense. It depicted the defendant as someone who responded to arguments with violence. Such a depiction was inflammatory in nature. Moreover, the phone call made in violation of a restraining order, although not sensational, demonstrated that the defendant had a tendency to violate the law when it interfered with his relationship with the complainant. The admission of the restraining order also signaled to the jury that another court had imposed legal restrictions regarding the defendant's contact with the complainant in order to protect her.

[¶27] In fact, the complainant's testimony on the topic of the October 2020 phone call exemplified why the admission of this evidence was not harmless beyond a reasonable doubt. The complainant testified that the phone call made her feel as though the restraining order was "not going to stop [the defendant] from killing [her]." Combined with the evidence of the prior assault, this erroneously admitted evidence portrayed the defendant as a dangerous, if not deadly, abuser. Moreover, the court took no curative steps and gave the jury no limiting instruction as to the permissible purposes for which it could consider the Rule 404(b) evidence. The jury, therefore, was free to consider this evidence for any purpose and conclude that a court had previously decided that a restraining order needed to be issued against the defendant in order to protect the complainant. That portrayal may have persuaded the jury to discredit the defendant's theory at trial that the complainant was lying. In its closing, the State acknowledged that "the crux of this case" was the complainant's testimony. Because this case hinged upon the credibility of the complainant's testimony, the combined effect of the admission of this evidence could have led the jury to credit her testimony and dismiss any evidence contradicting the State's evidence. Therefore, we cannot conclude, beyond a reasonable doubt, that the jury's guilty verdicts were unaffected by the erroneously admitted evidence.[2]

---

[2] We have considered the State's remaining arguments and conclude that they do not warrant further discussion. See Vogel v. Vogel, 137 N.H. 321, 322 (1993).

### III.    Conclusion

[¶28] For the foregoing reasons, we conclude that the trial court erred in determining that evidence regarding the July 2020 assault, the restraining order, and the October 2020 phone call made in violation of the order was admissible.  We further conclude that those errors were not harmless beyond a reasonable doubt.  Accordingly, we reverse and remand.

<u>Reversed and remanded</u>.

MACDONALD, C.J., and BASSETT and COUNTWAY, JJ., concurred.